THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NOAH BANK** | ) | |
| **7301 Old York Road** | ) | |
| **Elkins Park, Pennsylvania 19027** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **EDWARD SHIN** | ) | |
| **a/k/a EUNGSOO SHIN** | ) | |
| **1575 Sloan Way** | ) | |
| **Ambler, Pennsylvania 19002** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Civil Action No. 2:18-cv-01413-WB** |
| | ) | |
| **SUNDAY JOURNAL USA CORPORATION** | ) | |
| **4201 Wilshire Boulevard, #333** | ) | |
| **Los Angeles, California 90010,** | ) | |
| | ) | |
| **Y & L MEDIA, INC., d/b/a SUNDAY** | ) | |
| **JOURNAL USA** | ) | |
| **4201 Wilshire Boulevard, #333** | ) | |
| **Los Angeles, CA 90010,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **ABC Companies No. 1 -10; John Does No. 1-10** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED COMPLAINT

### Preliminary Statement

1.      This is an action by Plaintiffs Noah Bank and Edward Shin a/k/a Eungsoo Shin ("Shin")

against Defendants Sunday Journal USA Corporation and Y & L Media, Inc., d/b/a

Sunday Journal USA (collectively "Sunday Journal" or "Defendants") seeking redress for

the commercial and other harm done to Plaintiffs as the result of many false, salacious,

and highly offensive statements about Plaintiffs, as published by Defendants during April, May, and November 2017.

2.     Noah Bank is a banking institution founded by a group of investors led by Shin.  Shin is currently President and CEO of Noah Bank.

3.     Noah Bank is a Pennsylvania banking corporation.  A substantial portion of its business focuses upon servicing Korean-speaking individuals and Korean-owned businesses located in the Commonwealth of Pennsylvania.

4.     Sunday Journal, a Los Angeles-based Korean-language periodical, published four articles in the Korean language that were highly critical of Noah Bank and Shin.  In these four defamatory articles (the "Articles"), Sunday Journal falsely reported that Noah Bank and Shin engaged in illegal business practices such as bribery, illegal kickbacks, tax evasion and money laundering.

5.     Upon information and belief, non-party Dong Hyun Lee ("Dong Lee"), or persons acting in concert with Dong Lee, provided Chi-Yong Ahn, the author of the Articles, with the content ultimately published by Sunday Journal in the Articles.  Non-party Dong Lee sought to damage Noah Bank's and Shin's reputation with Noah Bank's shareholders, employees, customers, potential customers and with potential business associates and investors.

6.     Notwithstanding the lack of any reliable factual support for their false claims, Defendants made the conscious decision to publish these defamatory statements.  At the time of each publication, Sunday Journal was either aware that its statements about Plaintiffs were false, or Sunday Journal had serious doubts about the truth of the claims.

7.     Sunday Journal's publication of these defamatory Articles was intended to, and in fact

did, reach Korean-speaking persons residing in the Commonwealth of Pennsylvania.

8.      As a result of Defendants' publication of defamatory statements about Noah Bank, Noah

Bank's brand has lost significant value, it lost banking business, and substantial business

opportunities that were otherwise available to Noah have been lost or negatively

impacted as a proximate result.

9.      As a result of Defendants' publication of defamatory statements about him, Shin suffered

damage to his reputation as well as pecuniary losses, including loss of compensation,

bonuses, and future income.

10.     Defendants' false and defamatory statements about Plaintiffs have caused substantial

harm to Plaintiffs' personal and professional reputations, for which Plaintiffs jointly seek

compensatory and punitive damages of no less than $15 million.

## Parties

11.     Plaintiff Noah Bank is a Pennsylvania banking corporation with its home office located at

7301 Old York Road, Elkins Park, Pennsylvania.

12.     Plaintiff Shin is a citizen of the Commonwealth of Pennsylvania and an individual

residing at 1575 Sloan Way, Ambler, Pennsylvania.

13.     Defendant Sunday Journal USA Corporation is a California corporation with its principal

place of business located at 4201 Wilshire Boulevard, #333, Los Angeles, California.

14.     Defendant Y & L Media, Inc. d/b/a Sunday Journal USA is a California corporation with

its principal place of business located at 4201 Wilshire Boulevard, #333, Los Angeles,

California.

15.     Defendants ABC Companies 1-10 and John Does 1-10 are companies and individuals,

identities currently unknown, who have an interest in Sunday Journal by ownership or

operation or may have otherwise contributed to the wrongful actions stated below.

## Jurisdiction and Venue

16.   The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because all Plaintiffs are citizens of different states from all Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs in satisfaction of the requirements of 28 U.S.C. § 1332(b).

17.   This Court has personal jurisdiction over each of the Defendants because each of the Defendants purposefully directed their defamatory statements to residents of the Commonwealth of Pennsylvania.

18.   In addition, each of the Plaintiffs, citizens of Pennsylvania, suffered harm from Defendants' defamatory statements within the Commonwealth of Pennsylvania.

19.   Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial portion of the events that gave rise to Plaintiffs' claims occurred in this District, including a substantial portion of the harm suffered by the Plaintiffs.

## Facts

20.   Noah Bank's customers are primarily Korean-speaking persons, and a substantial portion of its business focuses upon servicing Korean-speaking individuals and Korean-owned businesses located in the Commonwealth of Pennsylvania.

21.   According to the United States Census Bureau, there were more than 47,000 residents of Pennsylvania that considered themselves to be "Korean" in response to the 2010 Census survey.

22.   Of that number, approximately 30,000 residents of Bucks, Delaware, Montgomery and

Philadelphia Counties identified themselves as "Korean" in the 2010 Census.

23.   Sunday Journal is published in the Korean language on the internet, and its articles are also disseminated through its accounts on Twitter and Facebook, where the contents are intended by Sunday Journal to be further disseminated, as well as in paper format.

24.   Upon information and belief, Defendants were aware that Noah Bank was, at all times relevant to this Complaint, a Pennsylvania bank with its headquarters located in the Commonwealth of Pennsylvania.

The April 27, 2017 Sunday Journal Article

25.   On or about April 27, 2017, Sunday Journal published the first of four articles in the Korean language that were highly critical of Noah Bank and Shin generally, and specifically regarding a Noah Bank loan to the purchaser of a commercial property in Queens County, New York, occupied by several businesses, including a karaoke bar.  A true and correct copy of the April 27, 2017 article is attached hereto as **Exhibit A**.  A true and correct English translation of the May 4, 2017 article is attached hereto as **Exhibit B**.

26.   The first article featured the headline: "Inside story of serious injury to Eungsoo Shin, President of Noah Bank, due to an assault at a room salon."  The article was written by Chi-Yong Ahn, "the editor of the 'Secret of Korea.'"

27.   The article reports on a "physical fight" between Shin and Mr. Lee at a "room salon." The article makes the following *false* statements regarding the incident:

   a.   Shin engaged in "a physical fight" with Lee. (Shin did not engage in any fight with Lee).

   b.   Lee was an "acquaintance" and "like [a] brother" to Shin.  (Shin met Lee for the first time that evening).

    c.   Shin fractured his nasal bone.  (Shin's nose was not broken).

28.    The April 27, 2017 article reported that, "according [to] Korean-American professionals in the financial field, [Shin] has allegedly received some illegitimate commission in relation to loans."

29.    This statement is false and defamatory *per se* as it alleges that Shin engaged in illegal conduct by receiving an "illegitimate commission."

30.    The April 27, 2017 article also stated that "[e]specially, in 2015, President Shin received a consent order from financial supervisory authorities because of the poor bank management and the incompetence of the Board of Directors."

31.    This statement is false and defamatory *per se* as it is injurious to the business reputation of Noah Bank and Shin.

32.    Upon and information and belief, non-party Dong Lee, or persons acting in concert with Dong Lee, provided Chi-Yong Ahn with the false content ultimately published by Sunday Journal in its April 27, 2017 article.

33.    Non-party Dong Lee sought to damage Noah Bank's and Shin's reputation with Noah Bank's shareholders, employees, customers, potential customers and with potential business associates and investors.

34.    Upon information and belief, Sunday Journal purposefully directed its defamatory statements contained in its April 27, 2017 article at Korean-speaking persons residing within the Commonwealth of Pennsylvania, including Noah Bank's shareholders, employees, customers, potential customers and potential business associates and investors.

The May 4, 2017 Sunday Journal Article

35.    On or about May 4, 2017, Sunday Journal published a second article regarding Noah
       Bank and Shin.

36.    This article featured the headline: "An inside story of the suspicious large transaction to
       the loan, made right after the assault incident, for a disqualified real estate of the person
       who was at the scene of the assault with Edward Shin, the President of Noah Bank."  This
       article was also written by Chi-Yong Ahn.  A true and correct copy of the May 4, 2017
       article is attached hereto as **Exhibit C.**  A true and correct English translation of the May
       4, 2017 article is attached as **Exhibit D.**

37.    The May 4, 2017 article reported on a "$4.8 million-dollar loan" approved after "an
       inappropriate drinking party with a mortgage applicant."  The article makes the following
       *false* statements regarding the loan:

       a.    At the scene of the "incident, which resulted in President Shin's serious injury,
             the person keeping company with president Shin was a mortgage applicant, and it
             has been reported that one week after the incident, the mortgage applicant
             received a loan from Noah Bank and purchased the building where the assault
             incident took place. . .. The bank . . . decided to approve the loan right before and
             after the drinking occasion." (*The report that the loan was approved after the
             incident is false, as the loan was already approved at the time of the incident*).

       b.    The article correctly reported that this purchaser of the building that received the
             Noah Bank mortgage loan was sued by a real estate agent.  Then, the article
             offered that, "Banks are, in general, very reluctant to offer a loan for a building
             which is involved in litigation, so experts in financial circles analyzed that the

7

loan approval of Noah Bank was exceptional."  (*The report implying that Noah's approval of the loan was "exceptional" or not within the general norms is false, and the suit against the new owner, a minor defendant in that suit, was without substantial merit, as only the seller was potentially responsible for the real estate agent's commission*).

    c.    The purchaser of the building, Chungkang Lee, was the applicant for the loan from Noah.  "That is to say, the drinking party was inappropriate, due to the relationship among them; position 'B' as President and an Executive member of a bank, and position 'A' as a loan applicant."  (*The report that the meeting was inappropriate is false, as Shin and another bank officer were in attendance that evening to review the building's tenancy status at the request of the borrower, which is a legitimate lender function*).

    d.    "Originally President Shin had negative stance and ordered not to approve the mortgage, but for some reason, went through with mortgage approval.  Perhaps because it was considered that the amount of mortgage was about 50% of the building price, but it is fact that all staff members are wondering about this. Especially, the mortgage approval was executed while President Shin couldn't show up for work due to being assaulted, so the reason for President Shin's decision of the mortgage approval is garnering the attention."  (*Reports that mortgage was improperly approved after the incident are false, as it was approved before the incident*).

38.    The May 4, 2017, Sunday Journal article asserted that "[A] high-ranking executive of Noah Bank, who requested to remain anonymous, stated that Noah Bank granted the

mortgage to Mr. Lee.  Especially, the amount of mortgage was not just 4 million dollars but reached 4.8 million dollars.  It has been reported that, with the fund, Mr. Lee closed the escrow and finalized the bill of sales on the date he received the mortgage.  Initially, the sale price of the building was initially known to be at 8.5 million dollars, but since the loan was 4.8 million dollars, it can be inferred that the sale price of the building went up, or the amount of mortgage became greater to be used for other purposes.  However, so far, the bill of sales has not been registered at the Real Estate Registration Office of New York City, so the actual amount in unknown yet.  If the amount of 8.5 million dollars is recoded in the bill of sales, it will bring up another question of that the balance of the $900,000 was used for."

39.     These statements, which assert that Noah Bank and Shin improperly inflated the amount of the loan and implied that they engaged in kickbacks or other illegal transactions are false, constitute defamation *per se* because they report that Noah Bank and Shin engaged in conduct that constituted criminal offenses.

40.     The May 4, 2017 Sunday Journal article stated that the incident that "resulted in President Shin's serious injury has indisputably revealed the internally covert matters of a bank and the controversies over property transactions at the core of Korean commercial community.  If there were any unlawful deals in relation to the property transaction and others, it can have escalated to criminal matters, such as tax evasion and money laundering, etc., for which there is much attention towards the development of the incident."

41.     These statements, which assert that Noah Bank and Shin engaged in tax evasion, money laundering and other criminal activity are false and defamatory *per se*.

42. Upon information and belief, non-party Dong Lee, or persons acting in concert with Dong Lee, provided Chi-Yong Ahn with the content ultimately published by Sunday Journal in its May 4, 2017 article.

43. Non-party Dong Lee sought to damage Noah Bank's and Shin's reputation with Noah Bank's shareholders, employees, customers, potential customers and with potential business associates and investors.

44. Upon information and belief, Sunday Journal purposefully directed its defamatory statements contained in its May 4, 2017 article at Korean-speaking persons residing within the Commonwealth of Pennsylvania, including Noah Bank's shareholders, employees, customers, potential customers and potential business associates and investors.

The May 18, 2017 Sunday Journal Article

45. On or about May 18, 2017, Sunday Journal published a third article regarding Noah Bank and Shin.

46. This article featured the headline "Tracking a Suspicion: After a Room Salon Incident of Edward Shin, the President of Noah Bank, a Huge Amount of Suspicious Mortgage Approval to the Person Who Kept Company With."  This article was also written by Chi-Yong Ahn "issued from New York."  A true and correct copy of the May 18, 2017 article is attached hereto as **Exhibit E.**  A true and correct English translation of the May 18, 2017 article is attached hereto as **Exhibit F**.

47. The May 18, 2017 article was mostly repetitive of the prior two articles.  As a result, it repeated many of the false statements contained in the earlier articles.  The *false* statements in this third article include:

10

a.  The headline reporting that the loan was approved after the incident and the report that the mortgage was "suspicious;"

b.  Reports that the mortgage given to Mr. Lee was inflated by more than $900,000 and implying that this amount was improperly paid;

c.  Reports that Noah Bank improperly failed to obtain and record security interests in the mortgaged property;

d.  Reports that unnamed "bank officials" stated that, "[i]n relation to the building purchase, it is lack of logic that Noah Bank approved the mortgage without making any mortgage contract" and "perhaps there was a mortgage contract made, but if registered at the registry, the amount of the mortgage will be disclosed, and that's probably why they are postponing the registration;" and

e.  Additional reports that one week after the "drinking party" with Shin, Lee received a mortgage of $4.8 million.

48.  Upon and information and belief, non-party Dong Lee, or persons acting in concert with Dong Lee, provided Chi-Yong Ahn with the content ultimately published by Sunday Journal in its May 18, 2017 article.

49.  Non-party Dong Lee sought to damage Noah Bank's and Shin's reputation with Noah Bank's shareholders, employees, customers, potential customers and with potential business associates and investors.

50.  Upon information and belief, Sunday Journal purposefully directed its defamatory statements contained in its May 18, 2017 article at Korean-speaking persons residing within the Commonwealth of Pennsylvania, including Noah Bank's shareholders, employees, customers, potential customers and potential business associates and

11

investors.

The November 12, 2017 Sunday Journal Article

51.     On or about November 12, 2017, Sunday Journal published a fourth article regarding

        Noah Bank and Shin.

52.     This fourth article featured the headline "'Waiving hands' outside the Water (insolvent

        loan) 'Splashing feet' under the Water (lawsuit)."  This article was also written by Chi

        Young Ahn.  A true and correct copy of the November 12, 2017 article is attached hereto

        as **Exhibit G**.  A true and correct English translation of the November 12, 2017 article is

        attached hereto as **Exhibit H**.

53.     The November 12, 2017 Article is mostly repetitive of the prior three articles.  As a

        result, it repeats many of the false statements contained in the earlier articles.

54.     The article asserted that Shin engaged in bribery, stating that Shin "approved the offer of

        the loan to Mr. Lee with whom he had drinks while he was hospitalized, which raised the

        suspicion of a bribe with drink entertaining over the loan offer."

55.     This assertion is false because the loan was approved before the incident and Sunday

        Journal report of bribery is defamatory *per se*.

56.     Upon and information and belief, non-party Dong Lee, or persons acting in concert with

        Dong Lee, provided Chi-Yong Ahn with the content ultimately published by Sunday

        Journal in its November 12, 2017 article.

57.     Non-party Dong Lee sought to damage Noah Bank's and Shin's reputation with Noah

        Bank's shareholders, employees, customers, potential customers and with potential

        business associates and investors.

58.     Upon information and belief, Sunday Journal purposefully directed its defamatory

statements contained in its November 12, 2017 article at Korean-speaking persons residing within the Commonwealth of Pennsylvania, including Noah Bank's shareholders, employees, customers, potential customers and potential business associates and investors.

59.  Sunday Journal published the Articles with reckless disregard of the truth.

60.  As a result of the defamatory statements made by Sunday Journal, Noah Bank's reputation and goodwill in the Korean community was damaged.

61.  As a result of the defamatory statements made by Sunday Journal, Noah Bank has experienced pecuniary losses, including but not limited to the decrease in value of Noah Bank's equity to be converted into cash or other assets in (a) a potential Initial Public Offering; (b) a potential private equity purchase; or (c) in a potential exchange for a substantial outside investment, as well as the loss of banking business.

62.  As a result of the defamatory statements of Sunday Journal, Shin's reputation within the Korean community has been damaged.

63.  As a result of the defamatory statements of Sunday Journal, Shin has experienced pecuniary losses, including but not limited to, his income, bonuses, future income, and the value of his equity interests of Noah Bank.

**COUNT ONE**
**DEFAMATION (PRIVATE FIGURE)**

64.  Plaintiffs reallege and incorporate paragraphs 1 through 63 as though fully set forth herein.

65.  Plaintiff Shin is a private figure.

66.  Noah Bank is a private figure.

67.  The statements of purported fact published in the Sunday Journal Articles, as quoted

above, were false and defamatory.

68.     The Articles failed to identify the name of any individual source for the Articles.  The Articles contained no indication that Sunday Journal ever attempted to contact numerous witnesses who would have been a position to correct these false reports in the Articles, or thereafter.

69.     Sunday Journal made no attempt to contact Shin or Noah Bank prior to publishing any of the Articles.

70.     Sunday Journal deliberately published the Articles knowing that the facts stated therein were defamatory, knowing that the "facts" stated in them were likely false and were based upon unreliable sources, and compounded its misconduct by making a conscious decision not to contact witnesses with first-hand knowledge who would rebut the false reports Sunday Journal wanted to publish.

71.     Sunday Journal negligently published the defamatory statements in the Articles.

72.     Sunday Journal's conduct was knowing, malicious, willful, and wonton, entitling Plaintiffs to an award of punitive damages.

73.     The defamatory statements in the Articles have caused Noah Bank damages, including damages to its reputation and to its business interests and prospective economic opportunities.

74.     The defamatory statements in the Articles have caused Shin damages, including damages to his reputation, compensation, bonuses, and to his business interests and prospective economic opportunities.

75.     ABC Companies and John Does wrongfully participated in such activities and should be jointly and severally liable with Sunday Journal.

14

76.   As a result of Defendants' conduct, Plaintiffs are entitled to an award of compensatory damages in an amount to be proven at trial and not less than $15 million, in addition to punitive damages in an amount to be determined at trial.

**COUNT TWO**
**DEFAMATION (PUBLIC FIGURE)**

77.   Plaintiffs reallege and incorporate paragraphs 1 through 76 as though fully set forth herein.

78.   Plaintiffs are private figures.  However, should the Court find that Plaintiffs are public figure, Defendants are still liable for defamation.

79.   The statements of purported fact published in the Sunday Journal Articles, as quoted above, were false and defamatory.

80.   Sunday Journal published defamatory statements in the Articles either knowing they were false or with reckless disregard for the truth.

81.   The Articles failed to identify the name of any individual source for the Articles.  The Articles contained no indication that Sunday Journal ever attempted to contact numerous witnesses who would have been a position to correct these false reports in the Articles, or thereafter.

82.   Sunday Journal made no attempt to contact Shin or Noah Bank prior to publishing any of the Articles.

83.   Sunday Journal deliberately published in the Articles knowing that the facts stated therein were defamatory, knowing that the "facts" stated in them were likely false and were based upon unreliable sources, and compounded its misconduct by making a conscious decision not to contact witnesses with first-hand knowledge who would rebut the false reports Sunday Journal wanted to publish.

15

84. Sunday Journal's conduct was knowing, malicious, willful, and wonton, entitling Plaintiffs to an award of punitive damages.

85. The defamatory statements in the Articles have caused Noah Bank damages, including damages to its reputation and to its business interests and prospective economic opportunities.

86. The defamatory statements in the Articles have caused Shin damages, including damages to his reputation, compensation, bonuses, and to his business interests and prospective economic opportunities.

87. ABC Companies and John Does wrongfully participated in such activities and should be jointly and severally liable with Sunday Journal.

88. As a result of Sunday Journal's conduct, Plaintiffs are entitled to an award of compensatory damages in an amount to be proven at trial and not less than $15 million, in addition to punitive damages in an amount to be determined at trial.

**COUNT THREE**
**DEFAMATION *PER SE***

89. Plaintiffs reallege and incorporate paragraphs 1 through 88 as though fully set forth herein.

90. The statements of purported fact published in the Sunday Journal Articles, quoted above, and in this Count Three, were false.

91. Sunday Journal published in its Articles statements of purported fact that Plaintiff Shin engaged in criminal offenses including accepting "illegitimate commissions," bribery, kickbacks, tax evasion and money laundering.

92. Sunday Journal published in its Articles statements of purported fact that Plaintiff Noah Bank engaged in criminal offenses, including paying kickbacks, tax evasion and money

laundering.

93. Sunday Journal published in its Articles statements of purported fact that Plaintiff Shin
engaged in serious business misconduct, including, but not limited to, approving a loan
after "an inappropriate drinking party with a mortgage applicant," and improperly
inflating the amount of a mortgage.

94. Sunday Journal published in its Articles statements of purported fact that Plaintiff Noah
Bank engaged in serious business misconduct, including, but not limited to, that Noah
Bank improperly failed to obtain and file security interests in a mortgaged property, that
Noah Bank approved a mortgage without making any mortgage contract, and that a
consent order found "poor bank management" and that the Board of Directors was
"incompetent."

95. The defamatory statements in the Articles have caused Noah Bank damages, including
damages to its reputation and to its business interests and prospective economic
opportunities.

96. The defamatory statements in the Articles have caused Shin damages, including damages
to his reputation, compensation, bonuses, and to his business interests and prospective
economic opportunities.

97. Sunday Journal's conduct was knowing, malicious, willful, and wonton, entitling
Plaintiffs to an award of punitive damages.

98. ABC Companies and John Does wrongfully participated in such activities and should be
jointly and severally liable with Sunday Journal.

99. As a result of Sunday Journal's conduct, Plaintiffs are entitled to an award of
compensatory damages in an amount to be proven at trial and not less than $15 million,

in addition to punitive damages in an amount to be determined at trial.

**COUNT FOUR**
**<u>FALSE LIGHT</u>**

100.   Plaintiffs reallege and incorporate paragraphs 1 through 99 as though fully set forth

   herein.

101.   Sunday Journal published the Articles pertaining to Noah Bank and Shin that were false

   and thereby placed both Plaintiffs in a false light.

102.   Sunday Journal's Articles placed both Plaintiffs in a light which would be highly

   offensive to a reasonable person.

103.   Sunday Journal published the statements in the Articles either knowing they were false or

   with reckless disregard for the truth.

104.   The false statements in the Articles have caused Noah Bank damages, including damages

   to its reputation and to its business interests and prospective economic opportunities.

105.   ABC Companies and John Does wrongfully participated in such activities and should be

   jointly and severally liable with Sunday Journal.

106.   The false statements in the Articles have caused Shin damages, including damages to his

   reputation, compensation, and to his business interests and prospective economic

   opportunities.

**<u>Prayer for Relief</u>**

**WHEREFORE**, Plaintiffs demand judgment against all Defendants as follows:

   1.   Awarding compensatory and punitive damages to each Plaintiff in appropriate amounts to

      be determined at trial;

   2.   Enjoining Sunday Journal from further publishing or republishing the defamatory

18

statements made in the Articles;

3. Requiring all Defendants to publish appropriate retractions, including but not limited to retractions in the Sunday Journal and full page retractions placed by all Defendants in other popular Korean-language publications, including Korean Daily and Korean Times;

4. Awarding the Plaintiffs the recovery of their costs associated with this action, including but not limited to their reasonable attorneys' fees and expenses; and

5. For such other and further relief as the Court deems just and appropriate.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a jury trial on all claims that are triable to a jury in this action.

Respectfully submitted,

September 26, 2018

David A. Cohen
Pa. I.D. No. 54342
The Basil Law Group
1270 Broadway
Suite 305
New York, NY 10001
Phone: (917) 512-3066
davidacohen@rjbasil.com
*Attorneys for Plaintiffs*

**EXHIBIT A**

**34** 제 1071호
2017년 4월 30일(일요일)

선데이저널
www.sundayjournalusa.com

## 신용수 뉴욕 노아은행장
### 룸싸롱서 폭행당해 중상 입은 사건 내막

■ 22일 새벽 뉴욕 플러싱 룸싸롱서 만난 지인과 말다툼 끝 몸싸움
■ 발에 차여 2층계단서 굴러 떨어져 콧뼈와 광대뼈 부러지는 중상



# 갈수록 꼬이는 노아뱅크,
# '굿이라도 해야 할 판이네~~'

술한 화제를 몰고 다니는 뉴욕의 한인은행 노아뱅크 신응수행장이 룸싸롱에서 술을 마시다 다른 손님과 몸싸움 끝에 폭행당해 중상을 입은 것으로 드러났다. 신행장은 뉴욕 플러싱 한 건물 2층의 룸싸롱 입구에서 1층까지 굴러 떨어져 중상을 입고 앰뷸런스에 실려 중환자실로 긴급 후송됐고, 출동한 경찰은 용의자인 이모씨를 1급 폭행 혐의 등으로 체포, 형사재판에 회부한 것으로 확인됐다. 그러나 어찌된 영문인지 노아뱅크는 신행장이 중환자실에 입원할 정도로 큰 피해를 입었음에도 불구하고 '저녁을 먹다 타박상정도의 가벼운 부상을 입었다'며 한인언론들을 상대로 보도를 하지 말아달라며 군비를 아는 등 사건축소에 급급하고 있다. 노아뱅크가 이처럼 쉬쉬하는 것은 바로 CEO리스크 때문이다. 신행장이 엽병역으로 체포됐다는 사실이 추가로 알려지면 고객들의 신뢰를 잃을까 우려하기 때문으로 풀이된다. 이번 사건의 전후를 짚어 보았다.

안치용(시크릿 오브 코리아 편집인)

지난 22일 토요일 새벽 1시쯤, 뉴욕 퀸즈 플러싱 노던블루버드 154가의 C룸싸롱건물 1층, 뉴욕시경 경찰들과 앰뷸런스가 요란한 사이렌 소리를 내며 들이닥쳤다. 1층에는 핏자국과 함께 거구의 남성이 정신을 잃고 쓰러져 있었다. 이 거구의 남성은 신응수 노아뱅크행장[54세], 신씨의 얼굴은 유혈이 낭자했고 코 부분이 심하게 부어있었다는 것이 당시 현장에 있던 익명제보자의 주장이다. 신행장은 곧바로 앰뷸런스편으로 플러싱 부스 메모리얼병원으로 후송, 중환자실에서 입원치료를 받고 있다. 이게 바로 지난

주말 뉴욕한인사회를 강타한 신응수 노아뱅크행장의 룸싸롱 중상사건이다.

### 평소 호형호제하던 사이였는데

출동한 경찰은 22일 새벽 1시31분께 용의자 이모씨를 체포해 구치소에 수감했고, 1급 폭행혐의 등으로 형사재판에

### 경찰, 신응수 행장 병원 후송 뒤 용의자 이씨 긴급체포
### 1급폭행혐의로 쇠고랑 전과 없어 보석금내고 일단 석방

회부한 것으로 확인됐다. 뉴욕 퀸즈카운티지방법원이 웹사이트에 게재한 형사사건 기록에 따르면 용의자는 이영K씨로 1959년생, 58세이며, NYSID는 970860**로 드러났다. 이씨는 이날 밤 9시쯤 인정심문에서 국선변호인의 도

움을 받아 7500달러의 보석금을 현금으로 지불하고 석방됐으며 다음 재판일은 6월 5일로 정해졌다. 이씨는 미국 시민권자로, 전과가 없는 점 등이 참작돼 비교적 낮은 보석금이 책정됐다는 것이 법조계 인사들의 설명이다. 특히 경찰은 처음 사건현장에 도착, 신행장이 크게 다친 것을 보고 범죄조직 등이 관련된 사건일 가능성이 크다고 판단, 인력지원을 요청해 2층 룸싸롱의 각방을 일일이 수색, 손님들의 신분증 등을 확인하기도 한 것으로 드러났다.

그렇다면 과연 이날 C룸싸롱에서는 어떤 일이 있었을까. 신행장과 이씨는 서로 아는 사이로, 각각 자신의 지인 2~3명과 함께 서로 다른 방에서 술을 마시고 있었으나, 복도에서 마주친 뒤 인사를 하고 가볍게 술잔을 나누기도 했다. 신행장은 54세, 맨해튼에서 사업을 하는 이씨는 58세로, 신행장은 이씨를 형으로 불렀지만, 이야기도중 언성이 높아지기도 했다. 그러나 1시쯤 양측이 자리를 파하고 집으로 가려다 2층 룸싸롱의 현관 앞에서 마주쳤고, 이때



> WebCriminal
>
> **Case Details - Summary**
>
> **CASE INFORMATION**
> Court:            Queens Criminal Court
> Case #:          CR-016292
> Defendant:     Lee, Young
>
> Defendant
> Name:           Lee, Young K
> Birth Year:     1959
> NYSID:          970860
>
> Incident and Arrest
> **Incident**
> Date:   April 22, 2017
> CJTN:  6811222
> **Arrest**
> Date & Time:  April 22, 2017 01:31
> Arrest #:         Q176189
> **Officer**
> Agency:         NYPD
> Command:
>
> Attorney Information
> **Defense Attorney**
> No Defense Attorney Information on File
> **Assistant District Attorney**
> Name:     Queens County District Attorney,
> Assigned:  April 22, 2017

▲ 신응수행장 관련세포내역



## Weekly Society

신행장과 이씨가 몸싸움을 벌였다는 것이다. 그러다 이씨의 발길질에 맞아 신행장이 2층 계단에서 굴러 떨어졌다는 것이 일부 목격자의 진술이다.

이 목격자는 '몸싸움 현관앞에서 마주쳤을 때 신행장이 이씨를 향해 '형'이라고 부르면서도 머리채를 잡으려 하고 '**'라는 미국욕을 계속 퍼붓는 바람에 분위기가 험악해 졌다. 이씨가 신행장의 욕에 화가나서 발로 찼고 계단에 서 있던 신행장이 미처 붙잡을 사이도 없이 1층까지 굴러 떨어졌다'고 밝혔다. 이에 대해 가해자로 체포된 이씨 측은 '발로 차는 시늉을 하자 계단에 기

대고 있던 신행장이 이를 피하려다 스스로 굴러 떨어진 것'이라는 상반된 주

장을 했다. 설사 이씨측 주장처럼 발이 닿지 않았다하더라도 위협적인 행동을 한 죄를 피할 수는 없다. 이처럼 양측 주장은 엇갈리고 있지만 다행히 몸사통에 설치된 CCTV에 당시 상황이 생생하게

잡혔고, 현재 경찰이 실제로 이씨의 발이 신행장의 몸에 닿았는지 여부를 확인중인 것으로 알려졌다.

### 심각한 폭행사건 불구 은행측 함구

신행장은 사건당시 뇌진탕 증상까지 우려됐으나 병원진단결과 뇌진탕이나 뇌출혈증세는 없고 코가 심하게 다쳐



신응수 행장, 살해 협박혐의체포 등 숱한 논란의 당사자

코뼈가 금이 가고 광대뼈도 붓는 등 안면을 다쳐서 입원중인 상태다. 이에 따라 신행장은 사건발생 사흘이 지난 25일에도 은행에 출근을 하지 못한 것으로 밝혀졌다. 이상한 것은 노아뱅크의 태도다. 노아뱅크는 한인언론들이 이 사건에 대해 문의하자 '신행장이 저녁식사 중 가벼운 찰과상을 입었다. 아무 문제도 없다. 곧 출근할 것'이라며 사건을 축소, 은폐하는 데 급급했다. 또 한

인언론들에게 제발 이 사건을 보도하지 말아달라며 애원하고 있다. 경찰이 용의자를 체포하고 신행장이 다쳤음에도 불구하고 오히려 피해자 측이 바짝 몸을 사리고 있는 것이다.

노아은행의 이 같은 행태는 바로 CEO리스크 때문으로 풀이된다. 신행장은 지난 2000년대 후반 한인 회계사인 목모씨와 다툼을 벌이다 접근금지명령을 받고 소송전까지 비화하기도 했었다. 또 지난 2011년에는 한인치과의사 이모씨에게 40만 달러를 빌린 뒤 돈을 갚으라고 요구하자 이씨를 '죽여 버리겠다'고 협박한 혐의로, 재판을 받기 위해 법원에 출석했다 전격 체포돼 '살해협박 한인은행장 체포'기사가 한인 언론에 보도되는 등 끊임없는 논란을 빚은 인물이다. 또 사기대출관련 민사소송을 당하는가 하면, 대출과 관련해 불법커미션을 받았다는 의혹을 받고 있다는 것이 한인금융권 인사들의 주장이다. 특히 지난 2015년에는 은행을 부실하게 운영하고 경영진의 능력이 부족하다며 은행감독당국으로 부터 컨센트오더를 받고, 경영진 교체권고까지 받았지만 지금까지도 은행장자리를 굳건히 지키고 있는 오뚜기같은 인물이다.

### 온갖 구설수 신행장 끝내 폭행사건 비화

노아뱅크는 특히 술로는 유명한 인물로 알려진 신행장이 뭄사통에서 술을 마시던 중 폭행당했다는 사실이 일반에 알려질 경우 은행의 신뢰를 추락시킬 수 있다는 점을 우려하는 것으로 분석된다. 바로 CEO 리스크다. 기업이든, 은행이든, 그 책임자의 행동이 논란이 될 경우, 그 기업은 위기에 처하게 될 가능성이 큰 것이다.

한인사회에서는 결국 터질 것이 터지고 말았다는 반응이 많다. 신행장은 형사사건과 별개로 거래자나 건물주등을 상대로 소송을 제기할 수도 있지만, 그냥 조용히 넘어가자는 입장인 것으로 알려지고 있다. 한인사회에서는 과연 이날 신행장이 누구와 만나서 어떤 이유로 술을 마셨는지 궁금증이 커지고 있다. '누구' 와 '무엇'이 밝혀지면 또 한번 파란이 예상되는 대목이다.



당신을 위해 준비한 최고의 휴가

**LA 중심에 위치**
한인타운 중심부, LA지역 공항, 주요관광지에서 가장 가까운 거리에 위치해 있습니다.

**호텔처럼 관리하기**
24시간 사무시, 무료인터넷, 피트니스 시설 지갑실 등을 관리하게 이용 하실 수 있습니다.

**내집처럼 아늑하게**
잠을 잘 수 있는 나만의 공간과, 세탁시설을 완비해 장기 출장시에도 내집처럼 아늑함을 느끼실 수 있습니다.

LASPATEL.com
LA스파텔

**EXHIBIT B**

# ACEA TECHNICAL LANGUAGES

*Registered with the AOC of New Jersey*
*Active Member of ATA & the OCA of NY*
51 Upper Montclair Plaza, Suite 22
Upper Montclair
New Jersey, USA 07043

*Phone (973) 783-4938, (201) 398-3231*
*Fax (973) 744-2521*

This is to certify that the attached document [An article #1, concerning Noah Bank] is accurately and truthfully translated from **KOREAN** into **ENGLISH**, to the best of my knowledge, ability and belief, based upon the original documents.

DATE: _July 06_ , 2017
SIGNATURE: _____
NAME: Ok-Soon Dang_____
Korean Translator

Sworn to and Subscribed to
Before Me this _6th_ day
of _July_ , 2017

_Joseph A. Fortunato_

JOSEPH A. FORTUNATO, ESQ.
ATTORNEY AT LAW
STATE OF NEW JERSEY

\* Formerly A & A TRANSLATION (website: aatranslation.com)

# Inside story of serious injury to Eungsoo Shin, President of Noah Bank, due to an assault at an escort bar

■ Arguments ended up with a physical fight with an acquaintance met at a bar with escort service in the early morning hours of the 22nd
■ Severe injury of fractures on nasal bone and cheekbone by being kicked to tumble down the 2nd floor stairs,

Share this news

Vol. 1071 | Posted on April 27, 2017 by Sunday, admin in headlines, Society

# Things are getting more and more entangled for Noah Bank,

## 'Looks like even an exorcism in needed~~'

It has turned out that President of Noah Bank, a Korean bank in New York, Eungsoo Shin, who carries around multiple scandals, sustained severe injury after a physical fight with a customer of an escort bar while they were drinking. President Shin received serious injury after tumbling down from the entrance of the escort bar on the 2nd floor to the 1st floor and urgently transported to an intensive care unit by an ambulance, and it has been confirmed that the dispatched police arrested the suspect, Mr. Lee, on charges of first-degree assault and referred the matter to criminal trial. However, despite the injury of President Shin being serious enough to be hospitalized, Noah Bank has been busy covering up the incident by lobbing Korean media not to report the news, saying 'he sustained a minor injury, such as bruise while he was having dinner'.

The reason Noah Bank hushing up the incident is because of the CEO risk. It is interpreted that, because President Shin has caused endless controversies, such as being arrested on a charge of threatening and being caught into a civil lawsuit for a loan fraud charge, and so forth, they are afraid to lose their clients' faith when such news article is added on newspaper – an assault at an escort bar. The situations before and after the incident are addressed [*as below*].

**Chi-Yong Ahn (The editor of the 'Secret of Korea')**

Around the early morning hours on the last 22nd, NYPD police officers and an ambulance rushed into with the loud siren to the first floor of the building of C escort bar at 154 Northern Blvd., Flushing, Queens, New York. On the first floor, a male with a big built was lying down unconsciously with bloodstains.

This male with a big built was Eungsoo Shin, the President of Noah Bank (age of 54), his face was all covered with blood, and the nose part was severely swollen, according to the statement of an anonymous informant, who was at the scene at that time.

President Shin was immediately transported to Flushing Booth Memorial Hospital by an ambulance and has been under treatment at the intensive care unit. This is the incident of serious injury to Eungsoo Shin, the President of Noah Bank, which hit the Korean community of New York last weekend.

**They were usually like brothers to each other**

It is confirmed that the dispatched police arrested the suspect, Lee, sent him to a detention center, and referred the matter as a criminal case with charge(s) of first-degree assault. According to the record of criminal cases posted on the website of Queens County Criminal Court of New York State, it is revealed that the suspect is Young K. Lee, born in 1959, age of 58, with NYSID No.[*NY state ID No.*] 970860**.

Around 9:00 PM on the day, with the assistance of a public defender at the arraignment hearing, Lee paid the bail of $7,500.00 in cash to be released, and the next court date was set on the 5th of June. Lee is an US citizen, and the bail was set low with consideration of his no criminal records, according to the explanation of legal professionals.

Especially, when the police arrived at the site of the incident, they found President Shin was severely injured, so they requested additional police forces to search each room of the escort bar on the second floor one by one, and checked each customer's ID card because the police had a concern that the incident might have been related to some criminal organization(s), etc.

Then, what indeed happened at the C escort bar on that day? President Shin and Lee had known to each other, each of them were in different rooms and drinking with 2-3 of their own acquaintances, ran into each other and greeted, and even had a few drinks together. President Shin is 54 years old, and Lee, who has his own business in Manhattan, is 58 years old. President Shin called him big brother, but their voices were raised from time to time during the conversation.

It was reported that around 1:00 AM, they ran into each other again in front of the entrance of the escort bar located on the second floor, on the way their home after breaking up their gathering, and at that moment, President Shin and Lee had the physical fight. There, President Shin was kicked by Lee and tumbled down the stairs of the second floor, according to the statements of some of witnesses.

This witness disclosed that 'When they ran into each other in front of the entrance of the escort bar, President Shin called Lee 'big brother' but, at the same time, he was trying to grab Lee's hair and hurling American curse, such as '**' at him repeatedly, so the atmosphere got menacing. Lee kicked President Shin because he got mad over President Shin's verbal abuse, and President Shin, who was standing on the stairs at the moment, had not enough time to hold on anything but tumbled down to the first floor'.

As for the incident, the side of Lee, who was arrested as an assailant, provided a conflicting claim that 'As Lee was pretending to kick, President Shin, who was leaning against the stairs, tumbled down by himself as he was trying to dodge the pretense'.

Even if Lee actually did not touch [*President Shin's body*] with his foot as Lee side claimed, he still cannot avoid the charges related to his threatening action. The claim made by both sides conflict, but fortunately the CCTV [* *closed-circuit TV camera*] installed at the escort bar vividly recorded the whole situation, and it is reported that the police are currently reviewing it to confirm whether or not Lee actually kicked President Shin.

## The Bank remains silent in spite of the serious assault incident

People were concerned that President Shin might have symptoms of cerebral concussion at the time of the incident. Yet, the diagnostic outcome of the hospital showed that there were no symptom of concussion or brain hemorrhage, and he is still being hospitalized, due to his severe facial injuries, such as a nose bone fracture and swollen cheekbone, etc. For these reasons, it has been confirmed that President Shin did not show up at work on the last 25th, three days after the incident.

The unusual thing is the reaction of Noah Bank. When Korean media were inquiring the incident to Noah Bank, the Bank was preoccupied to minimize and cover up the incident by stating"President Shin sustained a mild abrasion. There isn't any problem. He will return to work soon". In addition, Noah Bank is begging Korean media not to publish the incident.

Even though the police arrested the suspect and President Shin was injured, the side of the victim rather shows much more anxiety around the incident.

Such a behavior of Noah Bank can be explained as for the CEO risk. In the late 2000s, President Shin received a restraining order after he had a fight with Mr. xx Mok, a Korean accountant, then the incident even turned into a lawsuit.

Also, in 2011, President Shin borrowed $400,000.00 from Mr. xx Lee, a Korean dentist, and when Lee requested [*President Shin*] to pay it back, he threatened Lee by saying "I will kill you". Then, President Shin had to appear at the court for the trial [*or a hearing*] and right away got arrested, so articles with the title 'President of a Korean Bank being arrested for making death threats' were reported by Korean media, and so on. He is the person who has created endless controversies.

In addition to a civil lawsuit in relation to loan fraud was filed against him, and according Korean-American professionals in financial field, he had allegedly received some illegitimate commission in relation to loans. Especially, in 2015, President Shin received a consent order from financial supervisory authorities because of the poor bank management and the incompetence of the Board of Directors, and he was even recommended to replace the members of the Board of Directors. Yet, President Shin still firmly maintains his position, as like a roly-poly.

## With all scandals, President Shin finally turned the assault incident into a lawsuit

It has been analyzed that Noah Bank was concerned about losing the customers' faith over the Bank if the fact around the incident in which President Shin, who had been notorious especially for drinking, was assaulted while he was drinking at an escort bar would be reported to public. This is because of the risk of the CEO. When the behavior of a person in charge becomes controversial, the company will have a greater risk of being in jeopardy, regardless whether it is a business or a bank.

In the Korean community, many showed the same reaction to the incident that it could happen at any time soon or later. President Shin could file lawsuits against the assailant, landlord of the building, and so forth, but showed the intention to pass it quietly. There is a curiosity growing in Korean community that with whom and for what reason President Shin was drinking on the day. When the answers to the questions of 'with whom' and 'for what reason' are revealed, it is expected that there will be turmoil once again.

**EXHIBIT C**

# 08

제 1072호
2017년 5월 7일(일요일)

선데이저널
www.sundayjournalusa.com

**뉴욕發**

## 노아은행 신응수 행장 룸살롱 폭행사건 직후
## 동석자 격격사유부동산에 의문의 거액대출 내막



▲ 플러싱노던블루버드 154번지 CEO 건물

신응수 노아은행장 룸살롱 중상사건 당시 신행장과 동석했던 사람은 모기지신청자였으며 이 모기지신청자는 룸살롱중상사건발생 일주일 뒤 노아은행에서 대출을 받아 사건발생 건물을 매입한 것으로 알려졌다. 당초 건물주인은 브로커를 통해 이 건물을 매도하기로 했으나 브로커를 배제하고 대출의향자와 직접 건물을 매각하려던 건물주인과 대출의향자 모두 브로커로 부터 소송을 당한 것으로 드러났다. 노아은행도 이 같은 소송사실을 알고 대출을 꺼려하다 술자리를 전후해 대출을 해주기로 결정했고, 실제 신행장이 이날 술자리 폭행으로 중상을 입고 출근을 못하는 상태에서 대출이 이뤄진 것으로 알려졌다. 은행은 통상 소송이 걸린 건물에 대해서는 대출을 매우 꺼리기 때문에 노아은행이 전격대출을 해 준 것은 매우 이례적이라는 것이 금융권의 분석이다.

신응수 노아은행장 룸살롱 중상사건 이면을 짚어 보았다.

안치용(시크릿 오브 코리아 편집인)

# 행장이 모기지 대출 신청자와 부적절한 술자리를 갖은 후

# 소송걸린 건물에

# 480만달러 전격대출 해 줬다면…

**N⊙AHBANK**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

Date Filed:

CHANG HYUN KIM, and N Y VEST REALTY INC.,

Index No.:

              Plaintiffs,

  - against -

W&W INTERNATIONAL LLC; MICHEL WANG; MJSSS
ENTERPRISE, LLC; RICHARDSON IRREVOCABLE
TRUST; KIWI CONCEPT LLC; DEH-JUNG, LLC; PICNIC
GARDEN BBQ BUFFET INC.; and CHUNG K. LEE,

VERIFIED COMPLAINT

              Defendants.

Plaintiffs, CHANG HYUN KIM and N Y VEST REALTY INC., as and for their complaint
against the Defendants, W&W INTERNATIONAL LLC; MICHEL WANG; MJSSS ENTERPRISE,
LLC; RICHARDSON IRREVOCABLE TRUST; KIWI CONCEPT LLC; DEH-JUNG, LLC;
PICNIC GARDEN BBQ BUFFET INC.; and CHUNG K. LEE, by and through their attorney, Sajid
H. Jaffrey, Esq., hereby allege and show to the Court as follows:

**THE PARTIES**

1      That at all the times hereinafter mentioned Plaintiff, CHANG HYUN KIM was and
still is, a duly licensed real estate sales person associated with N Y VEST REALTY INC., in the
State of New York, and that at all of said times, he was, and still is, regularly engaged in said
business in the City of New York, County of Queens, and State of New York, with an office address
at 154-05 Northern Boulevard, 3rd Floor, Flushing, New York 11354

▲ 뉴욕베스트부동산과 김창현씨가 뉴욕주 퀸즈지방법원에 제출한 CEO건물주와 이정강씨, 피크닉가든 뷔페큐부페 상대 손해배상소송장

뉴욕 플러싱 노던블루버드 154-05번지 CEO건물, 플러싱한인상권의 중심인 150스트릿인근에 위치한 이 건물은 대지가 0.16에이커, 약 150평에 지하1층, 지상3층으로 조금 낡기는 했지만 알짜배기 건물 중 하나로 꼽힌다. 메인스트릿이라는 지하철역을 중심으로 한 상권이 중국인 이민자들이 물밀듯이 밀려오면서 상권은 노던블루버드를 따라서 동아일랜드쪽으로 계속 동진하고, 그 중앙에 위치한 지역이 노던블루버드 150스트릿일대, 현재 노던블루버드는 기존의 낡고 작은 건물들이 모두 헐리고 새 건물로 탈바꿈하는 등 거리 곳곳이 재개발이 한창이다. CEO건물도 그 중심에 있기 때문에 한국인과 중국인들이 누구나 갖고 싶어 하는 부동산으로 평가됐었다.

현재 이 건물의 1층에는 '피크닉가든 뷔페큐부페'라는 이름의 뷔페류식당이 최근 문을 열고 영업을 시작했으며, 2층은 CEO라는 이름의 룸씨롱과 일반 사무실, 3층도 변호사사무실과 부동산중개업소 사무실로 이용되며 지난 2005년 중국인 미셸 왕이 440만달러에

매입했다. 지난달 22일 새벽 신응수노아은행장이 술을 마시고 집에 가려다 시비가 발생, 폭행당해 2층에서 1층으로 굴러 떨어지고 코뼈와 광대뼈에 금이 가는 등 유혈이 낭자한 '끔찍한' 사건이 일어난 곳도 바로 이 건물이다. 신행장은 바로 이 건물 2층의 CEO라는 룸싸롱에서 술을 마시다 폭행피해를 입은 바로 그 장소다.

## 행장이 대출신청자와 룸살롱서 술자리

신행장은 지난달 22일 새벽 플러싱 부스메모리얼병원 중환자실에 입원해 치료를 받다 닷새만인 26일께 퇴원, 필라델피아 자신의 집으로 돌아갔으며, 얼굴을 심하게 다쳐 지난주 금요일까지 출근을 하지 못한 상태다.

신행장의 폭행피해가 알려지면서 끔찍한 피해를 당해 '안타깝다'는 반응과 함께 과연 그날 술자리에 '누가 동석했느냐'에도 뉴욕한인사회의 관심이 집중됐었다. 신행장을 폭행한 용의자는 다른 방에서 술을 마시던 사람인 것으로 밝혀졌지만, 신행장의 직업이 한인은행

창간 34주년
Since 1982 • Anniversary 34th

제 1072호
2017년 5월 7일(일요일)

09

Weekly Society

의 행장으로 은행대출 등 한인고객들의 돈줄을 쥐고 있다는 점에서 자연스럽게 이날 술자리의 동석인과 성격에 대한 궁금증으로 이어진 것이다. 노아은행 고위임원과 이날 CEO를 찾았던 고객 등에 따르면 당시 술자리에는 신행장과 김종근 노아은행 본부장, 그리고 이청강씨 등 3명이 함께 한 것으로 확인됐다. 이씨는 바로 이 건물 1층에서 '피크닉가든바베큐부페'를 운영 중인 인물로, 신행장의 고교선배이기도 하지만, 이 건물을 매입하기 위해 노아은행에 대출을 신청한 사람으로 밝혀졌다. 즉, '을'의 입장인 은행대출 신청자와 '갑'의 입장인 은행장과 은행간부의 부적절한 술자리였던 셈이다.

이씨가 이 건물을 사기 위해 노아은행에 대출을 신청했지만 예기치 못한 문제가 발생해 대출이 어려운 상황이었고, 이날 술자리는 이 같은 상황과 관련이 있다는 것이 이면을 요구한 금융권 관계자의 설명이다. 김영만 노아은행 이사장은 1급폭행혐의로 용의자가 경찰에 체포된 이 사건에 대해 '모기지대출과 관련, 건물을 보고 저녁식사를 하다 활과상을 입었다'고 사건을 축소했었다. 그러나 김이사장의 발언을 통해서도 '노아은행 대출과 관련있는 모임'임이 확인될 것이다. 그렇다면 이씨의 노아은행 대출과 관련한 '예기치 못한 문제'는 과연 무엇일까? 이는 뉴욕주 법원 소송검색시스템을 통해 쉽게 확인됐다. 바로 이 건물이 민사소송에 걸려 건물주는 물론 건물을 구입하려던 이씨까지 함께 피소된 것이다.

### 커미션문제로 소송 걸린 건물에 480만 달러 대출

뉴욕베스트부동산과 김장현씨는 지

난 1월 20일, 이 건물의 주인인 미셸 왕과 왕씨관련회사 5개사, 그리고 이청강씨와 이씨의 식당 피크닉가든바베큐를 상대로 손해배상소송을 제기한 것으로 밝혀졌다. 뉴욕베스트부동산과 김씨가 뉴욕주 퀸즈지방법원에 제출한 소송장을 한마디로 요약하면 이 빌딩 소유주가 자신을 브로커를 고용, 건물을 매각하면 커미션을 주기로 했지만, 빌딩소유주가 브로커가 물색해온 매입희망자와 직접 계약을 하고 입을 씻으려 한다는 것이다. 즉 브로커 복비를 안주려고 브로커를 배제시켰으니 손해를 배상하라는 게 골자다.

뉴욕베스트부동산측은 소송장에서 2015년말 이 빌딩소유주 W&W 인터내셔셔한회사가 뉴욕베스트부동산과 김씨를 브로커로 고용하고 건물을 850만 달러에서 999만9888 달러사이에서 매각해 주면, 매매가의 3% 커미션을 주기

로 했다고 밝혔다. 이에 따라 김씨등은 매입희망자 물색에 나섰고 2016년 1월과 2월 피크닉가든바베큐부페를 운영하는 이씨로부터 건물매입의사를 확인하고 850만 달러에 매각하기로 건물주와도 합의가 됐다는 것이다.

당시 조건은 50만 달러를 미리 디파짓하고, 다운페이먼트로 4백만 달러, 은행모기지로 4백 만 달러를 조달해 대금을 치르기로 했고, 소유주인 미셸 왕측은 김씨에게 3% 커미션 25만 5천 달러 지불에 동의했다고 원고 측은 주장

했다.

또 에스크로 크로징 날짜는 6월 30일 이전이며, 크로징과 동시에 3% 커미

## 신행장 룸살롱사건 동석자는 대출신청자 '누가 봐도 부적절한 자리'

## 모기지대출 문제로 접대 의혹…사건발생 직후 480만 달러 대출받아

25만5천 달러를 셀러, 즉 매도자가 지급하기로 했다는 것이다.

김씨는 자신과 계약당시 빌딩 소유주였던 W&W 인터내셔널유한회사는 브

로커를 배제하고 직접 계약하게 될 경우, 문제가 발생할 것을 의식해 지난해 2월 5일 매입희망자 이씨로부터 오퍼를 받은 뒤 같은 해 4월 8일 소유권을 이 회사 실소유주 미셸 왕과 관련된 4개 법인에 무상 양도하는 계약을 체결했다고 밝혔다.

즉 빌딩소유주를 W&W가 아닌 다른 법인으로 변경함으로써 브로커 커미션을 주지 않으려 했다는 것이다. 김씨는 계약을 기다리다 최근 미셸 왕이 설립한 4개법

⇒ 10면으로 기사 이어짐

⇒ 10면으로 기사 이어짐



▲ 김장현씨가 CEO인물주인 미셸 왕과 주고 받은 전화문자메시지, 미셸 왕은 2016년 2월 23일 당신이 유일한 에이전트이며, 850만달러라면 수용하겠다는 문자를 보낸 것으로 드러났다.



▲ 뉴욕베스트부동산과 김장현씨는 소송장에서 미셸 왕등 CEO건물주와 이청강씨 사이의 거래조건을 상세히 설명하고 양측이 커미션을 주기로 했다고 주장했다.



▲ CEO건물주인 미셸 왕측은 김장현씨측 소송내용을 사실상 모두 부인했다.

**10** 제 1072호
2017년 5월 7일(일요일)

선데이저널
www.sundayjournalusa.com

# Weekly Society

---

**N Y VEST REALTY, INC.**
154-05 Northern Blvd 3fl Flushing, NY 11354   Tel: 718-460-9090   Fax: 718-460-1222

SENT EMAIL

**OFFER TO PURCHASE**

Date: 02/05/2016

Re: Offer to Purchase
Owner:                    W & W INTERNATIONAL
Property Address:     154-05 Northern Boulevard
                                Flushing NY 11354
Block: 5265  Lot: 5

Dear Mr. Kim,
I have been authorized by my customer, Chung K Lee of  2949 211ᵗʰ ST Bayside  N Y
11360  to submit on his behalf, the following proposal for the purchase of the above-
captioned property.

1. Property Description: Commercial building
2. Use of the Property: Cabinet showroom
3. The Purchase Price:  $8,500,000.00
4. Deposit: $500,000.00  payable to Coldwell Banker trust account
5. The Down Payment: $4,000,000.00 payable at signing of contract to sellers attorney
   escrow account
6. Additional down payment due at closing of title: 4,000,000.00
7. Mortgage Amount:  $4,000,000.00
8. Other Conditions:  Structural, environmental, and title.  All systems must be in
   working order
9. Closing Date:  June 30, 2016
10. Commission:  3% per separate agreement with N Y VEST  REALTY  by seller at
    closing of title.

It is hereby understood and agreed that the seller and purchasers shall not be bound by
anything less than a mutually acceptable formal contract of sale executed by and delivered to
both parties. No Proposal or counter proposal will be construed to be a binding agreement or
contract. If this proposal is acceptable it shall be used as the basis for formal contracts of sale.
Said formal contract of sale shall be drafted by the respective attorneys for the seller and
purchaser within 10 days of the acceptance of this agreement.

Sales Associate

---

▲ 뉴욕베스트부동산과 김창현씨가 CEO건물주와의 브로커계약서라며 법원에 증거로 제출한 문서. 하지
만 서명자가 누구인지 기록돼 있지 않아, 법원이 계약서로 인정할지 다툼이 예상된다.

**⇒ 9면에서 기사 이어받음**

인, 즉 건물주와 피크닉가든바베큐부페
가 브로커인 자신을 배제하고 정식으로
계약서를 작성한 사실을 알게 됐고 계
약조건도 동일하다는 사실을 파악하고
는 소송을 제기한 것이다. 또 새 매입자
측인 이씨도 김씨측이 커미션을 조건으
로 빌딩주인과 이씨를 연결시켰음을 잘
알고 있다며 이씨측도 피고에 포함시키
고 피고측이 연대해 커미션 25만5천달
러를 배상하고 변호사비용을 부담하라
고 요구했다. 또 뒷새뒤인 1월 25일 해
당건물의 처분금지가처분도 신청한 것
으로 드러났다.

### 커미션 문제로 부동산처분금지 가처분신청

이에 대해 미셸 왕측은 3월 15일 법
원에 제출한 답변서를 통해 원고 측의
주장을 100% 부인한 것은 물론 계약서
도 없고, 소송장등이 적법하게 송달도
안됐다며, 소송을 기각시키고 자신들의
변호사비용을 원고 측이 부담해야 한다
고 주장했다.

실제 원고 측은 건물주와의 계약서
라며 문서를 증거로 제시했으나, 건물
주 측 서명자의 이름이 없이 서명만 된

것으로 드러나, 완벽한 계약서로 인정
받을 지 의문을 낳고 있다. 그러나 법
원에 증거로 제출된 '건물주와 김씨가

주고받은 문자메시지에서 건물주는 '
당신이 유일한 에이전트', '850만 달러
를 매각대금으로 제시한다면 수용하겠
다' 등의 김씨를 에이전트로 인정한 정
황도 드러났다.

이씨도 3월 24일 답변연기신청을
한 뒤 지난달 21일 법원에 제출한 답
변서를 통해 CEO건물주인과 매입계약
을 한 것은 사실이라고 인정했을 뿐 나
머지 원고 측의 주장을 모두 부인했다.
이씨는 또 원고 측이 잘못된 방법으로
계약을 방해하려고 개입했으며, 이 건
물에 대한 부동산처분금지 가처분신청
은 잘못된 것이므로 '받아들여서는 안
된다'고 밝힌 것은 물론 자신이 원고 때
문에 350만 달러이상의 피해를 입었다
며 350만 달러를 배상하라고 맞소송을
제기했다. 원피고 양측의 주장이 팽팽
히 맞서고 있는 것이다.

한 가지 분명한 사실은 이씨측은 소
송장대로라면 450만 달러는 자체조달
해도 400만 달러는 어디선가 모기지 돈
을 얻어야 한다. 이씨는 바로 이 모기지
를 노아은행에 신청했으나 이 건물
이 소송에 걸리면서 노아측이 모기지
대출을 주저했고, 만약 부동산처분금지
가처분신청이 법원에 의해 받아들여진
다면, 건물매입은 무산된다고 판단, 노
심초사했다는 것이 정통한 소식통들의
설명이다.

이씨로서는 노아은행으로 부터 하루
빨리 모기지 대출을 받아야 하는 상황
이었던 것이다. 그래서 자신의 답변서
를 법원에 제출한 바로 그날인 21일 밤

신용수노아은행장과 김본부장과 CEO
룸싸롱에서 술자리를 가졌고, 22일 새
벽 끔찍한 사건이 발생했던 것이다.

이 술자리 덕분이었을까. 신행장이
폭행을 당해 중상을 입었음에도 불구
하고 일주일만인 지난달 28일 금요일,
노아은행이 이씨에게 대출을 해줬다는
것이 이면을 요청한 노아은행 고위임원
의 주장이다. 특히 모기지 금액은 4백만
달러가 아니라 480만 달러에 달한다는
것이다. 이씨는 이 돈으로 모기지가 나
온 당일 에스크로를 클로징을 하고 매
입계약을 마무리지은 것으로 알려졌다.
당초 매매가격이 850만 달러로 알려졌
으나 480만달러가 대출된 것으로 미뤄
건물가가 올라갔거나 다른 용도로 모
기지론 액수가 늘어난 것으로 추정되
지만 아직 뉴욕시등기소에 매매계약이
등기되지 않아 정확한 거래액수를 알
수 없다. 만약 매매계약서에 850만 달
러로 기재돼 있다면 나머지 90만 달러
는 어디에 쓰였는지 또 다른 궁금증을
낳게 된다.

### 소송 중인 건물에 거액대출은 상당히 이례적

한인금융권은 '은행이 소송에 휘말린
건물에 대출을 해준 것은 은행의 일반
적인 관행과 다르다'며 이례적인 일로
평가했고, 노아은행을 포함한 한인금융
권도 '당초 신행장이 대출을 해주지 말
라며 부정적 입장이었으나, 어떤 이유
에선지 대출을 감행했다. 아마도 건물
가 대비 모기지 액수가 50%정도였던
점이 고려된 것 같기도 하지만
직원들도 의아해하는 것이 사
실'이라고 내부 분위기를 전했
다. 특히 대출은 신행장이 폭행
을 당해 출근을 하지 못하는 상
황에서 집행됐다고 밝혀 신행
장의 대출결심이유에 관심이
집중되고 있다.

어쨌든 신행장이 폭행피해를 당한 날
의 술자리는 대출권한을 가진 '갑'과 은
행대출에 목매는 '을'과의 자리였고, 그
날 이후 일주일 만에 다른 은행들은 관
행상 꺼려하는 '소송에 휘말린' 건물에
대한 대출이 성사된 것으로 알려졌다.
그날 룸싸롱 술값을 누가 냈는지는 알
수 없지만 참석자의 관계상 대출을 부
탁하는 사람으로 부터 은행권계자들이
향응을 받는 자리였을 지도 모른다는
게 일반적 분석이다.

신행장의 룸싸롱 중상사건은 은행내
부의 은밀한 문제들과 한인상권중심지
의 건물매매를 둘러싼 갈등을 여지없이
드러내고 있다. 만약 건물매매등과 관
련해 부정한 거래가 있었다면 탈세는
물론 돈세탁문제 등 형사사건으로도 번
질 수도 있어 귀추가 주목된다.



신행장 룸살롱 폭행사건발생 건물 소유주이자 소송중인 건물에 대출
금융권 '소송 걸린 건물에 모기지대출 해준 건 이례적' 색안경 평가

▲ 김영만 노아은행 이사장(오른쪽)은 1금폭행부의로 윤의자가 검찰에 체포된 이 사건에 대해 '모기지 대
출과 관련, 건물을 보고 저녁식사를 하다 황과상을 입었다'고 사건을 축소했었다.

**EXHIBIT D**

# ACEA TECHNICAL LANGUAGES

*Registered with the AOC of New Jersey*
*Active Member of ATA & the OCA of NY*
51 Upper Montclair Plaza, Suite 22
Upper Montclair
New Jersey, USA 07043

*Phone (973) 783-4938, (201) 398-3231*
*Fax (973) 744-2521*

This is to certify that the attached document [An article #2, concerning Noah Bank] is accurately and truthfully translated from KOREAN into ENGLISH, to the best of my knowledge, ability and belief, based upon the original documents.

DATE: _July 06_, 2017
SIGNATURE: _____
NAME: Ok-Soon Dang
**Korean Translator**

Sworn to and Subscribed to
Before Me this ___ day
of _July_, 2017

JOSEPH A. FORTUNATO, ESQ.
ATTORNEY AT LAW
STATE OF NEW JERSEY

**\* Formerly A & A TRANSLATION (website: aatranslation.com)**

[Issued in New York] An inside story of the suspicious large transaction to the loan, made right after the assault incident, for a disqualified real estate of the person who was at the scene of the assault with Eungsoo Shin, the President of Noah Bank

Share this news

vol. 1072 | Posted on May 4, 2017 by sunday_admin headlines society

# If a president of a bank approved a 4.8 million dollar loan for a building in pending for a litigation after an inappropriate drinking party with a mortgage applicant…

At the scene of President Shin's escort bar incident, which resulted in President Shin's serious injury, the person keeping company with President Shin was a mortgage applicant, and it has been reported that one week after the incident, the mortgage applicant received a loan from Noah Bank and purchased the building where the assault incident took place. Initially, the owner of the building was going to sell the building through an agent but then she tried to exclude the agent and sell it directly to the mortgage applicant. Therefore, the agent filed a lawsuit against the building owner and the mortgage applicant. Noah Bank was reluctant to approve the mortgage application because the bank was aware of the lawsuit pending. The bank, however, decided to approve the loan right before and after the drinking occasion. It has become known that the loan was actually approved when President Shin was not able to show up at work, due to the serious injury he sustained from the assault at the drinking party. Banks are, in general, very reluctant to offer a loan for a building which is involved in litigation, so experts in financial circles analyzed that the loan approval of Noah Bank was exceptional.

The inside story of the escort bar incident, which caused the serious injury of Eungsoo Shin, the President of Noah Bank, has been looked into [*as below*].

**Chi-Yong Ahn (Editor of the 'Secret of Korea')**

The CEO building, at 154-04 Northern Blvd, Flushing, NY, located near 150th street, which is the core of Korean commercial community in Flushing, has 0.16 acre of lot, and a building of about 150 *pyeong* [*equivalent to approx.* 5337.5 *square feet*], with basement space and three stories above ground. It is a little worn down but considered as prime real estate.

The Korean commercial sphere with the Main St. subway station at its center, has kept heading east, towards Long Island, along the area of 150th street on Northern Boulevard, because of the wave of Chinese immigrants pouring into the area. Currently, there is a boom with redevelopment everywhere around Northern Blvd., by demolishing every old and small buildings and replacing them with new buildings. The CEO building has been also evaluated as the one that everyone among Korean and Chinese wanted to own because of being located at the center of the area.

Currently, a barbeque restaurant called 'Picnic Garden Barbeque Buffet' has recently opened and started its business on the first floor of this building, an escort bar named CEO and general offices are on the second floor, and the third floor is used for many different types of offices, such as a lawyer's office and a real estate agent office. In 2005, a Chinese, named 'Michelle Wang' purchased the building at 4.4 million dollars. This is also the building where 'horrible' incident occurred - President Shin was assaulted and tumbled down from 2nd floor to 1st floor to sustain fractures to his nose bone and cheekbone with lots of bleeding, on the way home after drinking.

▲ A complaint for damage compensation filed with the Queens County Criminal Court of the New York State Courts, by New York Best Real Estate and Mr. Changhyun Kim, against the owner of CEO building, Chungkang Lee, and Picnic Garden Barbeque Buffet.

## A President of a Bank had Drinks with a Loan Applicant at an Escort bar

In the early morning hours on the 22nd, President Shin was hospitalized at the intensive care unit of Flushing Booth Memorial Hospital for 5 days, and was discharged on the 26th to return to his home in Philadelphia. Up until last Friday, he has not shown up at work due to the severe injuries on his face. As the news of President Shin's injury from the assault being reported, there were reactions of sympathy towards him, saying "feel sorry", but at the same time, the attention of people in the Korean community of New York was focused on the question of who he was indeed keeping company with at the bar on that day. It was revealed that the suspect who had assaulted President Shin was the person drinking in another room, but because of the fact that President Shin's position, being a president of a Korean bank who is influential in financing affairs to the Korean community, such as bank loans, etc., the questions concerning with whom and for what nature of the occasion of the drinking party took place, were naturally drawn out. It has been confirmed that, according to a high-ranking executive of Noah Bank and customers of CEO, who were present at the bar on that day, there were 3 people, President Shin, Jongkeun Kim, the Director of the Headquarters of Noah Bank, and Chungkang Lee, keeping company together. Lee is the business owner of the 'Picnic Garden Barbeque Buffet' located on the first floor of the building, and he went to the same high-school as President Shin, which makes Lee a school senior to President Shin, however, revealed to be a loan applicant of Noah Bank to purchase the building. That is to say, the drinking party was inappropriate, due to the relationship among them; position 'B' as a President and an Executive member of a bank, and position 'A' as a loan applicant.

Lee had applied for a loan at Noah Bank, in order to purchase the building, but he was under the difficult situation, due to an unexpected problem, and the drinking party on the incident date was related to the situation, based on the account of an informant, who worked in the financial field requested to remain anonymous. Youngman Kim, the Chairman of the Board of Noah Bank, minimized the incident by stating 'regarding the mortgage, he checked the building out and then was having dinner, and there he sustained abrasion' about the incident which actually was about a suspect arrested by police on a 1st degree assault charge. However, even by the comment of Chairman Kim, 'Meeting related to mortgage' was able to be confirmed. Then, what is the 'unexpected problem' related to Lee's loan from Noah Bank? This was easily confirmed by litigation search system of the New York State Courts. It is that the building was involved in a civil action, so not only the owner of the building, but also Lee, who was trying to purchase the building, has also been sued.

## A 4.8 million dollar loan for the building in a pending litigation due to a commission issue

It has been revealed that on the 20th of January, New York Best Real Estate and Chang-Hyun Kim filed a lawsuit to demand compensation for damages against the building's owner, Michelle Wang, 5 companies related to Wang, Chung-Kang Lee, and Lee's restaurant, Picnic Garden Barbeque Buffet. To summarize the complaint, New York Best Real Estate and Kim filed with the Queens County Criminal Court of the New York State Courts, the building's owner retained him and promised a commission when he sells the building, but the agent found that the building's owner tried to make the deal directly with the potential buyers and pretended nothing happened. That is to say, the loss has to be compensated because they excluded the agent, so as not to pay the brokerage fee due.

▲ The text messages between Changhyun Kim and the CEO building's owner, Michelle Wang.
It has been confirmed that, on the 23rd of February, 2016, Michelle Wang sent a text message stating 'You are the only agent, and if the price is set for 8.5 million dollars, I will accept it'.

New York Best real estate stated that, in late 2015, W&W Internatio[-*nal*] LLC, the owner of the building, stated it would hire New York Best real estate and Mr. Kim as its agency, and if they success selling the building within the price range of 8.5 million dollar and 9.999888 million dollars, 3% of the selling price would be paid to the agency as a commission. For this reason, the agency including Mr. Kim started searching for the potential buyers, confirmed the purchase intention of Lee, who ran Picnic Garden Barbeque Buffet, in January and February, 2016, and also confirmed an agreement with the building's owner to settle the deal at a price of 8.5 million dollars.

The condition of the deal at the time was to deposit 5 hundred thousand dollars in advance, to pay 4 million dollars as the down payment, and to procure the balance of 4 million dollars using a bank mortgage to pay in full, and the plaintiff claims that the owner Michelle Wang agreed to pay Mr. Kim $255,000.00, which was the 3% commission.

Mr. Kim confirmed that W&W International LLC, the owner of the building at the time of the contract, entered into the agreement of the gratuitous conveyance of the ownership of the building to four different corporations that were actually possessed by Michelle Wang, on February 5, which was after getting the offer from the purchase candidate Mr. Lee, because W&W International LLC was aware of the problem arising when directly agreeing to the deal with the purchaser after excluding the agency.

In other words, there was an attempt to not pay the commission to the agency by changing the ownership from W&W to a different corporation. While Mr. Kim was waiting for the settlement, he noticed the fact that 4 different corporates, that were the owners of the building and recently established by Michelle Wang, and Picnic barbeque buffet excluded him and drew up the contract with the same condition of the deal, and for this reason, he filed the lawsuit. Moreover, Mr. Kim included the new purchaser, Mr. Lee, as a defendant since Mr. Lee was also well aware of the condition of the commission, which was the reason why Mr. Kim connected Mr. Lee with the building's owner. Mr. Kim claimed to compensate $225,000.00 with the expense for all legal expenses to the defendants. Besides, it has been confirmed, after 5 days, which was on the 25th of January, he requested for the injunction for prohibition of disposition.

▲ New York Best Real Estate and Changhyun Kim explained in details the conditions of deal between the owner of CEO building, including Michelle Wang, and Chungkang Lee, and claimed that both parties agreed to pay him the commission.

A preliminary injunction application of the estate disposal due to a commission issue

As for this matter, through the written answer submitted to the court on the 15th of March, Michelle Wang, of course, denied the claim of the plaintiff, and claimed that there was no contract and the complaint was not legitimately served, and for these reasons, the case had to be dismissed, and the plaintiff had to cover the expenses for her lawyer. In fact, the plaintiff presented a document claimed to be the contract with the building's owner as the evidence, but it is doubtful if the evidence is considered to be a complete contract since the document is signed without the name of the owner of the building. However, the evidence, which is the text messages between the owner of the building and Mr. Kim, indicating 'You are only the agent', 'If the offer for the building sale is at 8.5 million dollars, I will accept it', proves the situation that Mr. Kim was considered as the agent.

Mr. Lee as well requested for a postponement of response on the 24th of March, and on the 21st, through the written answer submitted to the court, admitted the fact that there was a contract of sale with the owner of CEO building but denied the remaining of the plaintiff's claims. Moreover, Mr. Lee stated that the plaintiff interrupted the sales contract with a wrongful means, 'preliminary injunction of the estate disposal' concerning the building was wrongful, so 'should not be approved', and due to the plaintiff, he sustained a loss of over $350,000.00. Therefore, Mr. Lee filed a countersuit claiming $350,000.00 for the compensation for his damages. The claims of both plaintiff and defendants are diametrically opposed to each other.

One clear fact is that, based on the lawsuit files, even if Mr. Lee had self-fund of 4.5 million dollars, the remaining balance of 4 million dollars was to be fulfilled by obtaining a mortgage from some sources. Mr. Lee actually requested this mortgage to Noah Bank, but because the building became involved in a litigation, the bank was reluctant to approve the mortgage. Thus, well-informed sources explained that Mr. Lee has been very nervous because he figured out that if the

preliminary injunction of the estate disposal finally would be approved by the court, the purchase of the building would fall through.

Due to certain situation, Mr. Lee had to get a mortgage from Noah Bank as soon as possible. Hence, on the night of the day when he submitted the answer to the court, which was on the 21st, he had the drinking party with President Shin and the Director of the Headquarters, Mr. Kim, and then in the early morning hours on the 22nd, the horrible incident occurred.

▲ Youngman Kim, the Chairman of the Board of Directors of Noah Bank, minimized the incident by stating 'In relation to the mortgage, he checked the building out, then he was having dinner, when he suffered an abrasion(s)' concerning the incident, which was actually about a suspect arrested by police on a 1st degree assault charge.'

Would it be all thanks to the drinking party? Despite President Shin's serious injury, the 28th of last month, Friday, which was a week later, a high-ranking executive of Noah Bank, who requested to remain anonymous, stated that Noah Bank granted the mortgage to Mr. Lee. Especially, the amount of mortgage was not just 4 million dollars but reached to 4.8 million dollars. It has been reported that, with the fund, Mr. Lee closed the escrow and finalized the bill of sales on the date he received the mortgage. Initially, the sale price was initially known to be at 8.5 million dollars, but since the loan was 4.8 million dollars, it can be inferred that the sale price of the building went up, or the amount of mortgage became greater to be used for other purposes. However, so far, the bill of sales has not been registered at the Real Estate Registration Office of New York City, so the actual amount is unknown yet. If the amount of 8.5 million dollars is recorded in the bill of sales, it will brings up another question of what the balance of $900,000.00 was used for.

A large amount of mortgage for a building in a pending lawsuit is exceptional

Experts in the Korean financial circles analyzed that 'A bank approving mortgage for a building involved in a litigation is differ from the general practice of banks' as an exceptional event, and the experts in Korean financial circle, including Noah Bank, conveyed the inner atmosphere by addressing 'Originally President Shin had negative stance and ordered not to approve the mortgage, but for some reason, went through with mortgage approval. Perhaps because it was considered that the amount of mortgage was about 50% of the building price, but it is fact that all staff members are wondering about this'. Especially, the mortgage approval was executed while President Shin couldn't show up at work due to being assaulted, so the reason of President Shin's decision of the mortgage approval is garnering the attention.

In any case, the drinking party where President Shin was assaulted was the meeting between party 'A' who has the lending authority and party 'B' who was imploring the bank to give a mortgage, and it has been known that one week later, the mortgage approval went through for the building 'being involved in a litigation', for which other banks would be reluctant to approve based on the general practices. It is unknown who paid for the drinks at the escort bar on that day, but based on the relationship between people who were present there, it is generally analyzed that it may have been the situation, where the person who would ask a favor to receive a mortgage, offered the drinking party to entertain the bank officials.

The escort bar incident resulted in President Shin's serious injury has indisputably revealed the internally covert matters of a bank and the controversies over property transactions at the core of Korean commercial community. If there were any unlawful deals in relation to the property transactions and others, it can be escalated to criminal matters, such as tax evasion and money laundering, etc., for which there is much attention towards the development of the incident.

**EXHIBIT E**

**의혹 추적**

## 신응수 노아은행장 룸살롱사건 뒤 동석자에 수상한 부동산 거액대출

▶ '어떻게 소송 계류 중인 사람에 480달러나 모기지대출을…'
▶ 'UCC하나만 달랑 등기 디폴트 발생 시 한 푼도 못 건져…'
▶ '은행측, 대출액수 노출우려 모기지 계약 미등기 추측도…'
▶ '최소 850만달러 요구 건물주 760만달러 전격매도 의문…'

## '은행 내부에서 조차 우려 목소리'

# 룸살롱접대 받고 대출?
# 정상적인 모기지 대출?

〈안지용기자 뉴욕發〉 신응수 노아은행장의 룸살롱에서 중상을 입은 뒤 동석했던 안인에게 거액의 대출됐다는 본지 보도가 사실로 확인됐다. 당시 동석했던 한인사업가 이청강씨는 사고가 난 CEO건물을 지난달 28일 매입했던 본사도 역시 지난 12일 뉴욕 등기소에 등기된 이 건물의 권리증서를 통해 사실로 밝혀졌다. 그러나 매매금액은 당초 건물주가 브로커에게 강력하게 요구했던 850만 달러에 못 미치는 760만 달러로 드러나, 건물주가 예당초보다 낮은 가격에 건물을 팔았는지 여부와 차액 90만 달러를 다른 방법으로 보전해 준 것은 아닌지 새로운 의문이 제기되고 있다.

안지용(시크릿 오브 코리아 편집인)

**지**난달 22일 새벽 신응수 뉴욕 노아은행장이 중상을 입었던 CEO건물. 본보가 이미 2주전 보도한대로 이 건물은 지난달 28일, 신행장과 술자리에 동석했던 한인 사업가 이청강씨에게 매도됐음이 확인됐다. 지난 12일 오전 11시쯤 뉴욕시 등기소에 등기된 디드[DEED] 권리증서-매매계약서로 불러도 무방]에 따르면 뉴욕 플러싱 노던블루바드 154-5번지 사이오건물은 지난달 28일 마이클 왕등이 CMJ유한회사에 756만6천여달러에 팔았다.

이 디드에는 새 소유주인 CMJ유한회사의 유일한 멤버가 이청강씨라고 기재돼 있어, 이청강씨가 CMJ유한회사의 유일한 멤버가 이청강씨인 셈이다. 또 매도자 및 매입자가 서명한 뉴욕부동산양도보고서에는 판매계약일자[SALE

CONTRACT DATE]가 지난해 11월 22일, 판매/양도일자[DATE OF SALE/TRANSFER]가 4월 28일로 기재된 것

### 룸살롱 사건 동석자는 이청강씨, 사건발생 1주일 뒤 전격대출
### 은행, 하자있는 건물 모기지대출 외부 노출우려 UCC만 걸어

으로 확인됐다. 지난해 11월 22일 계약을 하고 4월 28일 크로징을 마친 것이다.

#### 건물주 제시한 금액과 90만달러 차이

더욱 놀라운 것은 이 건물의 매매가가 당초 건물주인 마이클 왕이 요구했던 850만 달러가 아니라 이에 훨씬 못 미치는 756만6천여달러라는 사실이다.

유한회사, 즉 왕씨 소유의 회사는 건물을 850만 달러에서 999만9888달러사이에서 매각해 달라고 요구했다.

이에 따라 이씨가 850만 달러 매각의사를 밝혔고, 매매대금은 500만 달러를 미리 디파짓하고 다운페이로 4백만 달러, 은행모기지

뉴욕베스트부동산등이 지난 1월 20일 건물주인 미셸 왕과 관련회사, 그리고 이청강씨를 상대로 제기한 손해배상소송에서 증거로 제출된 문자메시지에는 건물주인 왕씨는 '이 건물은 920만 달러까지 받을 수 있다&일한 에이전트인 당신이 850만 달러까지 받아준다면 수용하겠다. 850만 달러이하는 절대 안된다고 말한 것으로 드러났다. 또 2015년 말 이 빌딩소유주인 W&W



▲ 지난 12일 뉴욕시 등기소에 등기된 디드 – 지난 4월 28일 마이클 왕등이 CMJ 유한회사에 CEO건물을 760만달러상당에 매매했다고 기재돼 있다.

로 4백만 달러를 조달하겠다는 의사를 밝히기도 했었다.

Case 2:18-cv-01413-WB   Document 30   Filed 09/27/18   Page 40 of 56

## Weekly Society



▲ 이청광씨가 노던블루버드 147~42에서 왕갈비를 운영하다 CEO건물로 이사를 가면서, 기존 건물 유리창에 노란색 스프레이로 새 주소를 적어놓디(실버오크리얼티그룹 소송관련 제출 증거)

즉 동일한 건물에 대해 동일한 건물 가가 850만 달러 이상을 제시하고, 동일한 매입가가 850만 달러 매입의사를 밝혔지만 계약서상 매매금액은 당초보다 90만 달러나 줄어든 것이다. 랜로드는 10%이상 가격을 낮춰줌으로써 90만 달러가량 손해를 본 것이고 매입자는 90만 달러 이득을 본 셈이다. 더구나 건물주는 브로커에게 25만 달러 복비를 주지 않기 위해 브로커를 배제시키고 건물주와 직거래를 했다는 의혹으로 피소된 상태다.

25만달러 커미션을 아끼려다 피소된

다. 노아은행이 이씨에게 대출을 해줬으나 UCC만 등기한 것이다. UCC는 건물에 대한 등기가 아니라 건물에 부속된 제반 물품, 전 유체동산에 대한 담보설정이다.

이 UCC에는 CMJ 소유 건물의 CEO 건물의 제반물품에 대해 담보를 설정한다고 돼 있다. 은행관계자들은 '노아은행이 건물매입과 관련, 480만 달러를 대출하면서 모기지 계약을 하지 않았다는 것은 어불성설'이라며 '모기지 계약을 작성했겠지만 이를 등기소에 등기한 경우, 모기지 액수가 밝혀지기 때문에 등기를 미루고 있을 것'이라고 분석했다.

### 480만달러 대출해주고 UCC 등기 하나만

이 부동산거래와 관련, 노아은행 측의 석연찮은 행적도 드러났다.

노아은행측은 지난달 28일 이청강씨 측의 이건물 매입과 관련, 480만 달러를 대출해 줬으며, 15일 현재, 이씨측에 대해 UCC, 즉, 유체동산담보만 달랑 하나 등기해 둔 것으로 밝혀졌다. 뉴욕시등기소에 따르면 노아은행은 지난달 28일 UCC를 작성, 5월 1일 1시쯤 등기를 마친 것으로 나타났다. 이 UCC에 채무자는 CMJ 로 명시돼 있으며 CMJ는 이청광씨가 단독멤버인 CEO건물의 소유주이

모기지 계약조차 떳떳하게 등기하지 못할 대출이라면 왜 대출을 해줬을까라의 문이 아닐 수 없다. 언젠가 모기지 계약 등기는 하게 돼있지만 만약 모기지 계약을 하지 않았다면, 부동산에 담보를 설정할 수 없어, 디폴트가 되는 경우 부동산은 잡지 못하고, 식당 테이블과 숟간지와 냄비만 압류하는 불상사가 발생할 가능성도 배제할 수 없다.

### 양도세 내지 않으려 이중 계약 의혹도

한편 이 건물 건물주였던 마이클 왕측은 이청강씨측에 건물을 매매하기에 앞서 지난 3월 17일 다시 한번 이 건물 소유주를 변경했던 것으로 밝혀졌다. 마이클 왕측은 지난해 4월 8일 이 건물 소유권을 W&W 인터내셔널유한회사에서 자신과, 자신과 관련된 4개 법인에 무상양도한 이후 3월 17일에는 또 다시 자신과 또 다른 4개 법인에 건물을 무상양도한 것으로 드러났다. 이는 지

난 1월 20일 뉴욕베스트부동산등이 건물주 측을 상대로 소송을 제기함에 따라 이 소송에 제기된 피고명단에 포함된 소유주를 새로운 법인으로 대체, 피고에서 제외되기 위한 의도로 풀이된다.

특히 이 계약서에는 737만 달러에 거래됐다고 적혀 있으나, 계약서에 첨부된 뉴욕부동산양도보고서에는 거래금액은 0달러라고 보고함으로써 뉴욕시는 양도세를 단 한 푼도 부과하지 않은 것으로 밝혀졌다. 계약서에 737만 달러가 거래라고 기재된 만큼 뉴욕시에 20만 달러 상당의 양도세를 내야 할 상황이며, 탈세를 저질렀다는 의혹이 제기된다.

중요한 것은 4월 28일자 이청강씨 매매계약서에는 판매계약일자[SALE CONTRACT DATE]가 지난해 11월 22일, 판매/양도일자[DATE OF SALE/TRANSFER]가 4월 28일로 기재돼 있고, 3월 17일자 마이클 왕측의 매매에서는 판매 계약일자가 올해 3월 17일, 양도일자도 3월 17일로 기재돼 있다는 점이다. 즉 마이클 왕측은 지난해 11월 22일 이청 강씨와 판매계약을 체결한 상태에서 3월 17일 다른 사람들과 계약했으며, 이는 이씨와의 계약을 위배한 행위에 해당한다. 이 같은 사실은 모두 브로커와의 소송에서 건물주에게 불리한 정황으로 작용할 가능성이 크다.

반면 이씨 측으로서는 여차하면 마이클 왕의 이중계약을 문제 삼을 수 있기 때문에 전 건물주에 대해 레버리지를 확보한 셈이다. 이청강씨 측은 지난 1월 이 건물 테넌트들에게 CMJ 유한회사 명의로 렌트비 납부고지서를 보낸 사실을 확인됐다.

### 소송 계류 중인 건물에 대출 개운치 않은 뒷맛

한편 이씨는 지난해 11월 15일 예전에 노던블루버드 147~40과 147~42에서 운영하던 식당의 렌트와 관련, 건물주인 실버오크리얼티그룹으로부터 렌트비 미납 등으로 150만 달러 손해배상 소송을 당한 것으로 드러났다. 렌로드 측은 소송장에서 2007년 4월 1일부터 2017년 6월 30일까지 두개건물에 대한 렌트계약을 체결했으나 렌트비를 미납하는 등 계약을 이행하지 않았다고 주장했다.

이에 대해 이씨는 12월 15일 답변서를 통해 원고의 주장 대부분을 부인하고 맞소송을 제기했다. 이씨는 카운터클레임에서 건물주가 렌트 계약에 따른 건물 유지보수 의무를 지키지 않았고, 재산세와 수도요금 등을 테넌트에게 부리하게 떠 넘기는가하면 수도미터기 교체비용등도 부담시켰다고 주장하고 30만 달러의 손해를 입었다며 이에 대한 배상을 요구했다.

이처럼 이씨는 전 건물주로부터의 소송, 브로커로 부터의 소송 등 소송가가 175만 달러에 달하는 두개의 소송에 계류돼 있다.

상황이 이러함에도 불구하고 신용수노아뱅크행장과의 술자리 뒤 1주일 만에 노아뱅크로 부터 480만 달러를 대출



▲지난 3월 22일 뉴욕시 등기소에 등기된 디 - 지난 3월 17일자 매매 계약서에 첨부된 뉴욕부동산양도보고서에는 매매가가 0달러라고 적혀 있으며, 매매계약서상 737만에달러에 팔았다는 것과 상이하는 내용를 담고 있다. 또 기재일자 지난 3월 17일이라고 기재돼 있으므로 마이클 왕 은 이미 지난해 11월 22일 이청강씨측과 거래약을 한 상태이어 계약위 반의혹이 제기된다.

받아 CEO건물을 매입했다. 통상 은행은 소송에 연루된 부동산매매에는 대출을 꺼리게 되지만 노아뱅크는 소송이 2건이나 걸린 건물에 대출을 해준 것이다. 대출여부는 전적으로 노아뱅크의 판단이지만 술자리 뒤에 대출이 실행됐다는 것은 개운치 않은 뒷맛을 남긴다. 더구나 노아뱅크는 대출과 관련, 뉴욕시 등기소에 UCC 하나만, 달랑 등기해 놓은 상황이다. 유체동산에 담보를 설정해봤자, 테이블과 냄비밖에 못 건진다. 거기다 매매금액은 2007년의 당초 요구액보다 90만 달러가 적다. 아무리 봐도 이상야릇한 부동산매매와 대출이다. 결국 매도자와 매입자, 은행 등의 거래관련 모든 당사자가 일촉즉발의 위기에 처한 셈이다.

---

### 이청광씨 소유 CMJ유한회사와 CEO매입계약서, 12일 등기돼
### 건물주 737만달러에 팔고 뉴욕시에는 0달러 신고 '탈세'의혹

사람이 90만 달러 파격할인 세일을 실시했다는 것은 쉽게 이해할 수 없는 일이다. 도무지 이해할 수 없는 거래가 이뤄짐으로써 약 1백만 달러의 가까운 건물주의 손해를 매입자가 다른 방법으로 메워준 것은 아닌지 의혹이 발생할 수밖에 없는 상황이다.

**EXHIBIT F**

# ACEA TECHNICAL LANGUAGES

*Registered with the AOC of New Jersey*
*Active Member of ATA & the OCA of NY*
51 Upper Montclair Plaza, Suite 22
Upper Montclair
New Jersey, USA 07043

*Phone (973) 783-4938, (201) 398-3231*
*Fax (973) 744-2521*

This is to certify that the attached document [An article #3, concerning Noah Bank] is accurately and truthfully translated from KOREAN into ENGLISH, to the best of my knowledge, ability and belief, based upon the original documents.

DATE: _July 06_, 2017
SIGNATURE: _____
NAME: Ok-Soon Dang
Korean Translator

Sworn to and Subscribed to
Before Me this _6th_ day
of _July_, 2017

_Joseph A. Fortunato_

JOSEPH A. FORTUNATO, ESQ.
ATTORNEY AT LAW
STATE OF NEW JERSEY

* Formerly A & A TRANSLATION (website: aatranslation.com)

[Tracking a suspicion] After an escort bar incident of Eungsoo Shin, the President of Noah Bank, a huge amount of suspicious mortgage approval to the person who kept company with

'How is it possible to approve a 4.8 million dollar mortgage loan for a person who is in a pending lawsuit..?'

'For only one UCC registration, in case of default occurrence, impossible to receive even a penny back…'

'Non-registration of the mortgage contract by the bank, presuming the bank concerns about the mortgage amount to be disclosed…'

Share this news

vol. 1074 | Posted on May 18, 2017 by sunday admin in society, headlines

'Voices of concerns even inside the bank'

# Mortgage approval after receiving entertaining at an escort bar?

# Is it a normal mortgage loan approval?

<Reporter, Chi-Yong Ahn, issued from New York> It has been confirmed as reported in these columns that, after Eungsoo Shin, the President of Noah Bank, sustained serious injuries at an escort bar, a huge amount of mortgage was approved to a Korean client who kept company with him at the bar. The report in these columns about Chungkang Lee, a Korean businessman who kept company and purchased CEO building, where the incident occurred, on the 28th of last month, as well turned to be a fact through the certificate of title of the building registered on the 12th of last month at the Real Estate Registry Office of New York City. However, the transaction fee turned out to be only 7.6 million dollars, which is not close to 8.5 million dollars, the amount the building owner firmly demanded to an agent, so a new question is raised about why the building owner sold the building for a lower price than that initially demanded, and whether there were any other means used to preserve the difference of $900,000.00.

Chi-Yong Ahn (the Editor of the 'Secret of Korea')

It has been confirmed that the CEO building, where Eungsoo Shin, the President of Noah Bank, sustained serious injury in the early morning hours on the 22nd of last month, was sold to Chungkang Lee, a Korean businessman who kept company with President Shin at a drinking party. At around 11:00 AM on the 12th, according to DEED (a DEED is a certificate of title, which can be called as a 'bill of sales') registered at the Real Estate Registry Office of New York City, CEO building, located at 154-5 Northern Blvd., Flushing NY, was sold by Michael Wang and others to CMJJ LLC for about 7.6 million dollars on the 28th of the last month.

On this DEED, indicates Chung-Kang LEE listed as the only member of the new owner, CMJJ LLC, so Mr. Chungkang Lee was the purchaser. Moreover, the report of transfer of real estate of New York executed by the purchaser and the seller shows the sale contract date was the 22nd of November last year, the date of sale/transfer was recorded as of the 28th of April. On the 22nd of November, last year, they made the contract and closed it on the 28th of April.

Difference of $900,000.00 from the price offered by the building owner

The more surprising fact is that the selling price of this building was only about 7.566 million dollars, which was not even close to 8 million 5 hundred thousand dollars, the amount the building owner, Michael Wang initially demanded. Text messages submitted as proof in the damage suit against the building owner, Michelle Wang and the related companies, and Chungkang Lee shows that the building owner Ms. Wang stated 'This building can be sold for up to 9.2 million dollars. If you, as the only agent, manage to sell it at 8.5 million dollars, I will accept it. Under 8.5 million dollars is impossible ever.' Moreover, in the late 2015, W&W LLC, the owner of the building, which is possessed by Ms. Wang, requested to sell the building at the price range between 8.5 million dollars and 9.999888 million dollars.

▲ Mr. Chungkang Lee used to run a Wang-Galbi [*prime rib*] restaurant at 147-42 Northern Blvd. As he was moving into the CEO building, he wrote his new address using a yellow spray (submitted as a proof in relation to the litigation of Silver Oak Realty Group) on the window of the previously occupied building.

Therefore, Mr. Lee expressed his intention of purchasing at 8.5 million dollars, as well as paying 5 hundred thousand dollars as a deposit, 4 million dollars as the down-payment, and 4 million dollars by procuring a bank mortgage.

That is, for the same building, the same owner of the building proposed more than 8.5 million dollars for the selling price, and the same purchaser of the building expressed the intention to purchase the building for 8.5 million dollars, however, the selling price on the contract is actually 9 hundred thousand dollars lower than the initial price. The building owner lost about 9 hundred thousand dollars by lowering the building price by 10%, and the purchaser made the profit of 9 hundred thousand dollars. Besides, the owner of the building was sued because she was suspected to exclude the agency and settle the deal directly to not pay 2 hundred 50 thousand dollars to the agency.

It is not easy to understand that the person who was trying to save 2 hundred 50 thousand dollar-incentive gave a shocking 9 hundred thousand dollar-discount. Because the incomprehensible deal was settled, it is inevitable that suspicions will grow if there were any other means for the purchaser to make up the building owner's loss, which is about a million dollars.

4.8 million dollar mortgage approval with just one UCC registration

Regarding this real estate transaction, a questionable action of Noah Bank also emerges.

On the 28th of last month, regarding this building purchase, Noah Bank granted 4.8 million dollar mortgage to Chungkang Lee, but as of now, which is on the 15th, it turns out that Noah Bank received only a UCC registration from Mr. Lee, which is the corporeal movables chattel. According to the Real Estate Registry Office of New York City, Noah Bank drew up the UCC on the 28th of last month, which was completed with the registration at around 1 o'clock on the 1st of May. The UCC clearly states the debtor is CMJJ, and CMJJ is the owner of CEO building and has only one member, Chungkang Lee himself. That is, Noah Bank granted Mr. Lee the mortgage but registered only a UCC. The UCC is only the establishment of security for the corporeal movables [*fixtures*], such as the articles attached to the building, but not for the building itself.

On this UCC, it is stated the security is established for all sorts of items at the CEO building, which is owned by CMJJ. Bank officials have analyzed that 'In relation to the building purchase, it is lack of logic that Noah Bank approved the mortgage without making any mortgage contract', and 'Perhaps there was a mortgage contract made, but if registered at the registry, the amount of the mortgage will be disclosed, and that's probably why they are postponing the registration.'

It is questionable why the bank approved the mortgage if they even cannot confidently register the mortgage contract. Someday they will finally register the mortgage contract, but if they did not make any mortgage contract, the bank cannot establish security, so if in case it goes in default, it cannot be excluded that there will be an unfortunate situation, the bank cannot seize the real estate but is only able to seize the restaurant tables and pots.

▲ The DEED registered at the Real Estate Registry Office of New York City on the 12th of last month – It is recorded that Michael Wang and others sold the CEO building to CMJJ LLC for around 7.6 million dollars on the 28th of April.

**Another suspicion, double contract to avoid transfer tax**

Meanwhile, it has been revealed that the previous building owner, Michael Wang once again changed the ownership of the building on the 17th of March, before selling it to Chungkang Lee. On the 8th of April of last year, Michael Wang changed the ownership of the building from W&W International LLC to his own name and 4 other corporations related to him by conveying it gratuitously, and again on the 17th of March, he proceeded the gratuitous conveyance to himself and four other corporations. It can be explained that since New York Best Real Estate filed a lawsuit against the owner of the building, he intended to be excluded from being one of defendants listed on the complaint, by changing the ownership of the building.

Especially, it is written on the contract that the building was sold at the price of 7.37 million dollars, but the report of transfer of real estate of New York attached to the contract indicated the transaction amount is 0 dollar, so it has been turned out that there was no transfer tax paid to New York City. Since it is written as a 7.37 million dollar deal on the contract, there should be approx. 200 thousand dollars of transfer tax paid to New York City. Thus, another question is raised that they committed a tax evasion.

The important aspect is that, as of April 28, Chungkang Lee's sale contract indicated November 11 of last year as the sale contract date, April 28 as the date of sale/transfer, and as of March 17, Michael Wang's transaction indicated the sale contract date and the date of sale/transfer both as March 17. That is, after making a contract with Chungkang Lee on November 22 of last year, Michael Wang made another contract with other people on March 17, and this violates the contract with Mr. Lee. There is a great chance that this fact counts against the building owner during a lawsuit is in pending with the agency.

On the other hand, Mr. Lee has already secured the leverage over the previous building owner because he could raise a question regarding Michael Wang's double contract whenever he needed. It has been also confirmed that Chungkang Lee already sent invoices for rent to the tenants of the building under the name of CMJJ LLC on the 1st.

▲ A DEED registered at the Real Estate Registry Office of New York City on March 22 - The report of transfer of real estate of New York attached to the sale contract with the date of March 17 indicates the transaction amount was 0 dollar, which conflicts with the sale contract stating that the building was traded at the price of 7.37 million dollars. Moreover, the provisional contract date is recorded as of March 17, but Michael Wang already made the provisional contract on November 22 of last year, so there is another suspicion that he breached the contract.

Approving mortgage for the building in lawsuit leaves a bad taste in mouth

Meanwhile, it has been revealed that Mr. Lee was sued by Silver Oak Realty Group, the landlord, over the unpaid rent on November 15 in last year, which is related to his previous restaurant at 147-40 and 147-42 Northern Boulevard, and the lawsuit is to claim 1.5 million dollars of compensation.

The landlord claims that there were contracts of two buildings from April 01, 2017 to June 30, 2017, but the defendant did not obey the contract by defaulting on rents and so on.

Regarding this matter, Mr. Lee denied most of the claims of the plaintiff on December 15 through a written answer and he filed a counterclaim. Mr. Lee stated on the countersuit that the landlord did not fulfill his obligation to maintain the building based on the rent contract, eliminated property tax and water bill, and also eliminated the cost of water meter replacement. He claimed the loss of 300 thousand dollars and demanded the compensation for the loss.

Thus, Mr. Lee is involved in two lawsuits, one with the previous building owner, and the other with the real estate agency, and the total litigation value is reaching at 1.75 million dollars.

Despite the situation, he had a drinking party with Eungsoo Shin, the President of Noah Bank, and after one week of drinking party, received a mortgage of 4.8 million dollars and purchased the CEO building. Generally, banks are reluctant to approve any mortgage for real estates involved with litigation, but Noah Bank approved the mortgage for a building involved in two litigations. The rights of decision is totally on Noah Bank, but the approval of the mortgage was after the drinking party, and this fact leaves a bad taste in mouth. Moreover, regarding the mortgage, Noah Bank filed only a UCC at the Real Estate Registry Office of New York City. If the security is established in corporeal movables only, they can get tables and pots at the end. Besides, the transaction price was for 9 hundred dollars lower than the initial price the building owner demanded. It is definitely a strange real estate trade and a strange mortgage approval. Finally, everyone related to the transaction, the seller, the purchaser, and the bank, have been strained to a breaking point.

**EXHIBIT G**

# 32

제 1097호
2017년 11월 12일(일요일)

선데이저널
www.sundayjournalusa.com

## 지금 뉴욕의 한인사회에서는…

- 신응수 노아은행장 '룸씨롱 추락사건' 끝내 법정소송
- '룸씨롱향흥접대 직후 480만불 대출'의혹 인정한 셈
- '계단 등 어둡고 협소 - 뉴욕시 건축기준 위반' 주장

# 물 밖에선 '손사래'
# 물 밑에선 '발장구'

부실대출

법정소송

지난 4월의 본보가 단독보도했던 신응수 노아은행장의 룸씨롱추락사건과 관련, 신행장이 지난 달 말 마침내 룸씨롱 건물주를 상대로 소송을 제기한으로써, 본보보도가 정확했음이 다시 한번 확인됐다. 신씨는 건물주가 건축규정을 어기고 건물을 제대로 관리하지 않아 중상을 입었다며 육체적, 정신적 피해배상을 요구했다. 또 신 씨가 행장의 노아은행은 룸씨롱 추락사건발생 일주일 뒤 이 건물을 구입하려는 사람에게 480만 달러의 대출해줬다는 본보보도 역시 정확한 사실로 확인됐다. 노아은행은 지난 4월말 모기지계약을 체결, 돈을 빌려주고도 이틀 등기소에 등기하지 않고 쉬쉬하다, 3개월뒤에야 이틀 등기했으며, 대출일과 대출액수 모두 본보보도의 정확이 일치했다. 신씨는 이 건물을 사면서 시고당일 함께 술을 마신 사람에게 480만달러를 빌려줬지만, 소송정에서 이 건물이 건축규정을 제대로 지키지 않은 건물이라고 주장, 결국 자신이 엉터리건물에 거액을 빌려줬음을 시인한 꼴이 되고 말았다.

인지용(시크릿 오브 코리아 편집인)



QUEENS COUNTY CLERK 10/30/2017 03:57 PM)
DOC. NO. 1          RECEIVED NYSCEF

SUPREME COURT OF NEW YORK
COUNTY OF QUEENS

EDWARD KLEIN
                              Plaintiff,
          -against-
MJSSS ENTERPRISE LLC; RICHARDSON
IRREVOCABLE TRUST; KIWI CONCEPT LLC; and
DEH-JUNG LLC
                              Defendants.

TO THE ABOVE-NAMED DEFENDANTS, MJSSS ENTERPRISE LLC; RICHARDSON
IRREVOCABLE TRUST; KIWI CONCEPT LLC; and DEH-JUNG LLC, located
as follows:

MJSSS Enterprise LLC
61-26 212th Street
Oakland Gardens NY 11364

Richardson Irrevocable Trust
61-14 212th Street
Bayside NY 11364

Kiwi Concept LLC
110 Harrow Lane
Manhasset NY 11030

Deh-Jung LLC
136-75 37th Street #7G
Flushing NY 11364

YOU ARE HEREBY SUMMONED and required to serve upon

▲ 신응수 노아은행장이 지난 4월 룸씨롱 추락사건과 관련, 룸씨롱이 입주한 건물의 당시 소유주를 상대로 소송을 제기했다.

'신'응수 행장이 룸씨롱 추락사건과 관련, 반드시 손해배상을 요구할 것이다.'

본보가 지난 4월 말 신응수 노아은행 행장 룸씨롱 추락사건을 단독 보도하자, 한인사회에는 이 같은 소문이 끊임없이 나돌았고 신씨가 오늘 소송을 제기할까, 내일 소송을 제기할까 하는 것이 호사가들의 초미의 관심사였다. 그래서 소송을 이미 '제기했다, 아니다' 하며 입씨름까지 생길 정도였다.

아니나 다름까, 신 행장은 지난달 30일 원요일, 뉴욕주 퀸즈카운티지방법원에 소송을 제기한 것으로 확인됐다. 신씨는 자신의 영어이름인 '에드워드 신'이라는 이름으로, 한국인 변호사가 아닌 미국변호사를 봉해 소송을 제기했

법인이었다. 신행장은 놀랍게도 사고받 센 룸씨롱인 CEO나 이 사건과 관련해 거래자격으로 형사 입건된 이 모씨는 제외하고 이 업소가 입주한 건물의 사고당시 소유주만을 상대로 소송을 제기한 것이다. 신 행장은 소송정에서 CEO

## 건축기준위반 부실건축건물에 고액대출…부실대출 자인한 꼴
## CEO건물 전소유주상대 손배소 말다툼 이모씨는 피고서 제외

없이 나뒹굴고 신씨가 오늘 소송을 제기할까… 운영법인과 이모씨를 언급했지만 NON PARTY, 즉 피고가 아니라고 명시했다.

### 건축허가기준 어겨 건물에 웬 대출?

신 행장은 이 소송장에서 사고가 난 곳은 룸씨롱이라고 말하지 않고 가라오케라고 주장했으며, '지난 4월 21일 오후 10시를 이 업소에 도착했으며, 당시 2 백여명정도의 손님이 있었다'고 밝혔다. 신 행장은 '이날 밤 오후 10시45분쯤

주차 말다툼을 벌였다'고 설명했다. 그리고 자신이 말다툼당시 계단 맨 위에 있었고, 자신이 이 씨에게 말다툼의 불씨 돔을 제공하지 않았음에도 불구하고 이 씨가 부방적으로, 또는 의도적으로, 또는 악의적으로, 자신을 걷어찼고 길고 높은 계단을 따라 아래로 굴러 떨어졌다는 것이다. 신 행장은 자신의 굴러

바닥까지 순식간에 추락했다고 밝혔다.

신 행장은 피고, 즉 건물주측이 이 같은 결함을 알고 있었음에도 방치했으며, 계단이 지나치게 좁은 등 뉴욕시 건축허가기준 어이화였다고 강조하고 건물주기 위험을 조장한 것이라고 주장했다. 특히 사고 장소가 술을 마시는 술집이라며, 손님들이 대부분 취하게 되기 때문

창간 **35주년**
Since 1982·Anniversary 35th

제 1097호
2017년 11월 12일(일요일)

**33**

## Weekly Society



▲ 신용수 노아은행장 룸싸롱 계단주락직전의 모습

고밤지에 안전을 기해야 하지만 이름 소홀히 했다고 밝혔다. 그 결과 자신은 목에 심각한 부상을 입어서 아직도 후유증이 계속되고 있으며, 얼굴과 팔에 끝 정상을 입어 일부는 정상기능을 할

씨와 술을 마시다. 평소 자신과 친분이 있던 또 다른 손님인 이모씨와 맏아들을 빌인 뒤 2층 계단에서 추락, 중상을 입었다는 지난 4월달 본보 보도와 정확히 일치했다. 그리고 본보는 신행장이 사고 1주일 뒤 병원에 입원하는 상황에서 술을 마신 이 씨에게 예정대로 돈을 빌려주라고 승인함으로써, 이날 술자리가 대출에 따른 접대성 술자리일 가능성도 제기된다고 후속보도를 했고, 4월28일 480만달러 대출이 이뤄졌고, 대 매계약을 체결됐다고 보도했었다. 그러나 이 때매계약서는 5월 12일에야 등기됐고, 노아은행은 대출을 해준 5월 1일 UCC만 등기한 채 모기지 계약서류 등을 등기하지 않음에 따라, 정확한 모기지 액수가 확인되지 않았었다.

은행 등 금융기관이 모기지를 빌려주면 그로부터 며칠 내에, 급급적이면 한

**대출자와 룸씨롱에서 술을 마시다 중상**

신행장은 자신이 병원에 제출한 손해배상소송장에는, 자신이 돈을 대출해주려던 사람과 술을 마신 사실, 피고가 바로 자신의 고의이 사려던 건물의 주인이라는 사실 등을 일체 언급하지 않은 것으로 드러났다.

신 씨의 소송장은 신행장이 룸씨롱 CEO가 입주한 건물을 사기 위해 노아은행에서 모기지대출을 얻으려는 이모

## 10월 30일 손배소송 제기···자기가 대출해 준 건물 상대 소송

## 본보, '신용수 룸씨롱추락-중상보도-대출의혹'등 사실로 입증

수 없는 상태라고 밝히고 사고 뒤 직장에도 나가지 못했다고 강조했다. 따라서 심각한 육체적, 정신적 고통을 물론 엑스레이, 수술, 재활, 약값 등으로 엄청난 돈을 지출했다며 이에 대한 배상을 요구했다.

씨라고 밝혀, 등기소에 이를 등기하는 것이 정상이다. 그래야 은행이 담보권을 행사할 수 있기 때문이다. 만약 모기지를 등기하기 전에 건물주가 다른데 돈을 빌리고 저당해준 사람이 먼저 등기를 한다면, 1차 채권자가 바뀌게 된다. 이 같은 위험에도 불구하고 노아는 UCC만 등기했고, 얼마를 대출했는지 등을 숨기며 쉬쉬했었다.

이는 신행장이 대출자와 룸싸롱에서 술을 마시다 중상을 입었다는 사실이 본보보도를 통해 밝혀졌기 때문에 술 접대를 받고 대출을 해줬다는 의혹이 생길 것을 우려했기 때문으로 추측된다. 차일피일 모기지 등기를 미루던 노아은행은 대출을 받은 지 3개월이 지난 7월 17일 룸싸롱이 모기지서류 등을 등기한 것으로 확인됐다. 본보가 모기지 계약서를 확보, 검토한 결과 모기지액수를 체결한 것은 4월 28일로 확인됐고, 모기지액수는 480만달러로 드러났다. 이는 본보보도와 정확히 일치하는 것이다.

신행장이 룸씨룽롱앵미해와 관련, 자

씨 참으로 우스운 일이 발생했다. 신행장이 소송에서 이 건물이 건축규정도 지키지 않은 엉터리건물이라고 주장했기 때문이다.

### 엉터리대출 스스로 자인한 셈

신 행장 주장대로라면 신씨는 4월 21일 룸씨롱에서 술을 마시면서 이미 이 건물이 건축규정을 제대로 지키지 않은 것을 알았음에도 그로부터 1주일 뒤 대출을 해 줌으로써, 노아은행이 엉터리건물에 대출을 해 준 것을 자인한 꼴이 되고 말았다.

그렇다면 신 씨는 왜 이 사건으로 형사 입건된 이모씨는 소송피고에 포함시키지 않았을까하는 것이다. 신 씨는 소송장에서, '부방적으로 또는 의도적으로, 또는 악의적으로 이 씨가 자신을 걸

어챴다고 밝혔다.

즉, 이 씨가 의도적으로 자신에게 위해를 가했는지 확신할 수 없으며 그래서 이 씨를 상대로 소송을 제기하지 않은 것으로 볼 수 있다. 이처럼 신 씨가 신중을 기한 것은 사고당시를 촬영한 동영상이 존재하기 때문이다.

본보가 입수한 동영상에 따르면, 이 씨가 계단난간을 붙잡고 있는 신 씨와 맏딸봄을 밀어서 밀었길을 했지만 거리가 멀어서 신씨에게 직접적으로 밀이 닿았는 지는 확인이 쉽지 않은 형편이다. 하지만 신씨는 밀딸길이 놀라서 계단에서 떨어진 것은 분명하다. 아무도 신씨가 이번 소송에서 피고에 이씨를 포함시키지 않은 것은 이씨의 밀딸길이 추락의 직접적 원인인지 명확히 입증하기가 애매하기 때문일지도 모른다. 하지만 이씨에 대한 형사사건을 지켜보면서, 이씨를 상대로 손해배상을 제기할 것이 확실시된다. 이씨의 위험적 행동이 적어도 신씨추락의 간접적 원인이 된 것으로 볼 수 있기 때문이다. 이 경우 과연 법원이 이씨의 행동과 신씨 추락의 연

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2017061600356003002EAFIC

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 19 |
|---|---|---|
| Document ID: 2017061600356003 | Document Date: 04-28-2017 | Preparation Date: 07-11-2017 |
| Document Type: AGREEMENT | | |
| Document Page Count: 21 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| REGISTER ABSTRACT CO., INC. | REGISTER ABSTRACT CO., INC. |
| 215-15 NORTHERN BLVD SUITE 201 | 215-15 NORTHERN BLVD SUITE 201 |
| ALL ROER ATES PCK UP BY RED VISION | ALL ROER ATES PCK UP BY RED VISION |
| BAYSIDE, NY 11361 | BAYSIDE, NY 11361 |
| 718-631-6268 | 718-631-6268 |
| TAGUN206 TITLESNY COM8-10473 | TAGUN206 TITLESNY COM8-10473 |

| PROPERTY DATA | | | |
|---|---|---|---|
| Borough | Block | Lot | Unit |
| QUEENS | 5261 | 3 | Entire Lot |
| Property Type: COMMERCIAL REAL ESTATE | | | 154-01 NORTHERN BOULEVARD |

| CROSS REFERENCE DATA | | | |
|---|---|---|---|
| QUEENS | Year: 1975 | Reel: 456 | Page: 35 |
| OR Additional Cross References on Continuation Page | | | |

| PARTIES | | |
|---|---|---|
| PARTY 1: | PARTY 2: |
| LNC LLC | NORTHBANK |
| 154-01 NORTHERN BOULEVARD | 7101 OLD YORK ROAD |
| FLUSHING, NY 11354 | ELKINS PARK, PA 19027 |

| FEES AND TAXES | |
|---|---|
| Mortgage : | Filing Fee: |
| Mortgage Amount: | $ 4,800,000.00 | $ 0.00 |
| Taxable Mortgage Amount: | $ 0.00 | NYC Real Property Transfer Tax: |
| Exemption: | 255 | $ 0.00 |
| TAXES: County (Basic): | $ 0.00 | NYS Real Estate Transfer Tax: |
| City (Additional): | $ 0.00 | $ 0.00 |
| Spec (Additional): | $ 0.00 | RECORDED/FILED IN THE OFFICE |
| TASF: | $ 0.00 | OF THE CITY REGISTER OF THE |
| MTA: | $ 0.00 | CITY OF NEW YORK |

Parcel Identifier

▲ 노아은행은 신용수 노아은행장이 룸싸롱에서 대출의향자와 술을 마시다 추락사고가 난뒤 1주일만에 480만달러를 대출해 줬으나, 향후논란이 일 것을 우려했음인지, 모기지서류를 대출일로 부터 근3개월이 지나 서야 등기를 했다.

**EXHIBIT H**

# ACEA TECHNICAL LANGUAGES

*Registered with the AOC of New Jersey*
*Active Member of ATA & the OCA of NY*
51 Upper Montclair Plaza, Suite 22
Upper Montclair
New Jersey, USA 07043

*Phone (973) 783-4938, (201) 398-3231*
*Fax (973) 744-2521*

This is to certify that the attached document [News article for Eng Soo Shin] is accurately and truthfully translated from KOREAN into ENGLISH, to the best of my knowledge, ability and belief, based upon the original documents.

DATE: _12 - 11_ , 2017
SIGNATURE: _Joseph A. Fortunato_
NAME: **Joseph Fortunato**
Director of ATL

Sworn to and Subscribed to
Before Me this _11th_ day
of _DECEMBER_ , 2017

_Ok Soon Dang_
**NOTARY PUBLIC**
**STATE OF NEW JERSEY, USA**

OK-SOON DANG
MY COMMISSION EXPIRES
AUG 17 2019
ID # 2226615
NOTARY PUBLIC, STATE OF NEW JERSEY

**\* Formerly A & A TRANSLATION (website: aatranslation.com)**

**32** | No. 1097
11/12/2017 (Sunday)

SUNDAY JOURNAL
www.sundayjournalusa.com

## Around NY Korean Community Now...

■ Eung Soo Shin, President of Noah Bank, finally files a lawsuit for the 'fall incident at a room salon;
■ [*Mr. Shin*] Seemed to acknowledge the suspicion over the 'loan of 4.8 million dollars immediately following the entertaining at the room salon'
■ [*Mr. Shin*] Alleged a dark and narrow stairs, etc. - and a 'violation of the NY city construction code standards'

# 'Waiving hands' outside the Water (insolvent loan)

# 'Splashing feet' under the Water (lawsuit)

In relation to the room salon incident in which the President of Noah Bank, Eung Soo Shin, fell, which was reported by this newspaper exclusively at the end of April, Mr. Shin finally filed a lawsuit against the landlord of the building where the room salon was located. Thus, it has been confirmed once again that our report was accurate. Mr. Shin claimed that he sustained severe injuries due to the improper maintenance of the building by the landlord, which violated the construction code. His complaint demanded compensation for physical injuries and emotional distress. The report of 4.8 million dollars loan to a potential buyer by Noah Bank, where President was Mr. Shin, one week after fall at the room salon, has been also confirmed to be accurate. After Noah Bank entered into an agreement for a mortgage at the end of last April, Noah Bank did not register with the registration office for the loan, to cover up. Noah Bank, however, completed the registration three months later, for which the report was found to be consistent with the date and amount of the loan in the report. Although Mr. Shin offered a loan of 4.8 million dollars to the person whom he had drinks with on the date of incident, advising to buy the building, he alleged that the building violated the construction code in his complaint. In the end, Mr. Shin seemed to acknowledge himself that he offered a huge loan for a defective building.

**Chi Yong Ahn (Editor of the Secret of Korea)**

'In relation to the fall incident at the room salon of Eung Soo Shin, President of Noah Bank, definitely will demand compensation for damage'.
Such rumors have continually gone around Korean community as the fall incident at a room salon of Eung Soo Shin, President of Noah Bank that was reported by this newspaper exclusively at the end of last April. It has been a topic of gossip as to whether Mr. Shin would file a lawsuit [against the landlord of the building of the room salon] sooner or later. This gossip even led to arguments about whether 'a lawsuit had been filed or not'.

Sure enough, it has now been confirmed that President Shin filed a lawsuit in the Queens County District Court of NY State, on Monday, 30th of last month. Mr. Shin used his American name 'Edward Shin' for the filing, being

represented by a United States lawyer, not a Korean lawyer. The party of opponents are 4 different corporations; Richardson Trust, Kiwi Concept, Daejung, and MJSSS. President Shin surprisingly filed against only the owners of the building where the incident took place, excluding the CEO of the room salon and Mr. X Lee, the perpetrator, who was prosecuted with criminal charges in connection with the incident. President Shin mentioned the management corporation 'CEO' and Mr. X Lee, who were listed as NON PARTIES, namely, they are not defendants.

**What kind of loan offered over a building with substandard construction permit criteria?**

President Shin alleged in the complaint that the location of incident was a Karaoke bar, not a room salon and revealed that 'he arrived at the business premise approximately at 10:00 PM, on April 21 and there were around 200 customers at that time'.

President Shin explained that he confronted Mr. Lee [who was arrested on criminal charges] around 10:45 that night and had an argument with him around 12:45 AM the following day. He said that he was on the top of the stairs during the argument and Mr. Lee accidently, or intentionally, or maliciously kicked him, which made him roll down a long staircase.

President Shin tried to hold the rail while rolling down, but the staircase was not well-lit and it was steep, which instantly made him fall to the 1st floor.



▲ In relation to the room salon fall incident in April, Eung Soo Shin, President of Noah Bank filed a lawsuit against then landlord of the building which was leased by the room salon.

President Shin emphasized that the landlord of the building was aware of the defects but neglected to repair them and it was under substandard of construction permit criteria of NY City by having an extremely narrow staircase and the landlord facilitated the risk. Especially because it was a bar where customers drink and often become intoxicated, the landlord should have installed appropriate lighting and safeguards, etc. in order to

prevent incidents in advance, but it was neglected. As a result, he sustained a serious injury to his neck and still continued to suffer from aftereffects, and he also had fractures on his face and arm. He claims that his health still has not returned to normal and couldn't return to work following the incident. Therefore, he demanded compensation for damages, since he spent enormous sums for X-rays, surgery, rehabilitation and medication, etc., and as well as for pain and suffering.



▲ *Eung Soo Shin, President of Noah Bank, just before the fall at the room salon stairs*

**Serious Injury sustained while drinking at a room salon with a lender**

It has been revealed that President Shin never stated certain facts in the complaint, such as that he had drinks with the person to whom he offered a loan, and that the defendant in the matter was the landlord of the building that his client attempted to buy, etc.

The complaint of Mr. Shin was exactly consistent with our report at the end of April, stating that President Shin rolled down from the 2nd floor and sustained serious injuries after he had verbal altercation with another customer, who had been acquainted with him previously. Our follow-up report stated that one week after the incident, President Shin approved the offer of the loan to Mr. Lee with whom he had drinks while he was hospitalized, which raised the suspicion of a bribe with drink entertaining over the loan offer, and we reported that 4.8 million dollars loan was granted on April 28 and entered into transaction agreement. But, this transaction agreement was not registered until May 12 and Noah Bank did register only the UCC, not the mortgage contract document, which resulted in the failure of verifying the exact mortgage amount.

When a financial institute, such as a bank, etc. offers a mortgage, it is normal practice that the institute registers the mortgage with a registrar's office within a few days, as soon as possible. This allows the bank to exercise a security right. If an owner of a building receives a loan from another institute before the mortgage is being registered and the lender registers first, the primary creditor will be changed. Despite such risk, Noah registered only the UCC [*Uniformed Commercial Code*] and covered up by hiding the amount of the loan, etc.



▲ *It has been confirmed that the loan issuance date was April 28, the total loan amount was 4.8 million dollars, as a result of verification of the mortgage paper registered by Noah Bank on July 17.*

It is presumed that [ ] was concerned about any possible following suspicion over the loan offered in exchange of drinking entertainment since our report revealed the fact that President Shin was seriously injured while he was drinking with a borrower at a room salon [*a bar with room service*]. It is confirmed that Noah Bank, having delayed the registry from day to day, finally registered the mortgage as of July 17, which was done approximately 3 months after the loan. Our newspaper obtained the mortgage contract and, as a result of reviewing it, it revealed that the execution date was on April 28 with the mortgage amount of 4.8 million dollars. This was consistent with our report.

It is ludicrous that President Shin filed a lawsuit against the seller of the building for which he offered a loan to a person to purchase the building, in relation to his room salon assault damage. It is because President Shin alleged in his complaint that the building was defective, since it did not even comply with construction code.

**Seemingly acknowledging his own sham loan**

If the allegation of President Shin is correct, it's no better than he acknowledges himself that Noah Bank offered a loan over a defective building despite being aware of the building violations under the construction code, and the loan was offered one week following the incident, where he was drinking at the room salon on April 21. If so, this raises a question as to why Mr. Shin did not include Mr. Lee [as a defendant], who had been arrested on a criminal charges related to the incident. Mr. Shin stated in the complaint that Mr. Lee kicked him 'accidentally, intentionally, or maliciously'.

In other words, it cannot be verified whether or not Mr. Lee intentionally assaulted Mr. Shin. It is believed that this is why he didn't include Mr. Lee as a defendant in the complaint. The reason why Mr. Shin had to be careful was because there was a video taken of the incident. According to the video clip obtained by this newspaper, Mr. Lee made kicking motions during the argument with Mr. Shin, who was holding the rail of the staircase. Yet, it is not easy for us to determine whether or not Mr. Lee's foot directly touched Mr. Shin, since there was some distance between them. However, it is clear that Mr. Shin fell down from the staircase from the shock of the kicking of Mr. Lee. Mr. Shin perhaps thought that it would be difficult to prove that the kicking was the direct cause of the fall. But, considering the criminal case against Mr. Lee, it is certain that there will be a claim for compensation against Mr. Lee. This is because that the threatening act of Mr. Lee may be considered

as an indirect cause of the fall of Mr. Shin. In such case, the key point is what degree of the relevance between Mr. Lee's act and Mr. Shin's fall. This will be considered by the court.