THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOAH BANK and EDWARD SHIN a/k/a EUNGSOO SHIN, | ) |
| | ) Civil Action No. 18-1413-WB |
| | ) |
| Plaintiffs, | ) DECLARATION OF EDWARD SHIN |
| v. | ) IN SUPPORT OF PLAINTIFFS' |
| | ) OPPOSITION TO DEFENDANTS' |
| SUNDAY JOURNAL USA CORPORATION, | ) MOTION TO DIMISS |
| And Y&L MEDIA, INC., | ) |
| | ) |
| Defendants. | ) |

Edward Shin (a/k/a Eungsoo Shin), pursuant to 28 U.S.C. § 1746, states as follows:

1.    I am the President and CEO of plaintiff, Noah Bank, a Pennsylvania chartered bank, and I am also an individual plaintiff in this action. I have personal knowledge of the facts contained in this declaration.

2.    I have been in the banking business for more than 25 years.

3.    In 2004, I became the CEO of Royal Asian Bank ("RAB"), which was formed that same year as a subsidiary of a larger public Pennsylvania banking entity.  RAB received a separate Pennsylvania charter on July 7, 2006.

4.    RAB operated primarily in Pennsylvania where it had several branch offices and focused on servicing the local Korean-American communities, and operated three branches in Pennsylvania and one office in New Jersey.

5.    As a result of certain language issues, RAB began very early on to refer to itself as "Noah" or "Noah Bank," which then became the Bank's trade name.

6.    On December 30, 2010, I led a group of investors that bought RAB.

7.    On March 23, 2011, the State of Pennsylvania's banking department approved RAB's use of the name "Noah Bank." RAB then officially changed its name to "Noah Bank"

on June 1, 2011.

8.  I have been the President and CEO of Noah Bank continuously since its inception.

9.  Noah Bank's headquarters are located in Elkins Park, Pennsylvania.

10.  Noah Bank's stock is not publicly traded and appears on no exchange.

11.  I am a resident of the Commonwealth of Pennsylvania and have been such a resident for the last 25 years.

12.  A substantial number of Noah Bank shareholders have always resided in Pennsylvania.

13.  No employee or member of the Board of Directors of Noah Bank resides in California.

14.  Noah Bank does not have any branches or offices in the State of California.

15.  Noah Bank has never had any branches or offices in the State of California.

16.  Noah Bank has operated successfully since its founding and has enjoyed an excellent reputation for its banking services since its inception, until its reputation was attacked by Sunday Journal and those providing information to Sunday Journal.

17.  Chi-Yong Ahn, the author of the Sunday Journal articles at issue in this case (the "Articles"), did not contact or interview me prior to the publication of any of his articles in Sunday Journal, nor to my knowledge did he contact any employee or director of Noah Bank.

18.  I have known a person named Dong Hyun Lee (" Dong Lee"), the person I believe is a significant source for information in the Articles, for many years.

19.  Dong Lee, once a good friend of mine, has been a very active antagonist of Noah Bank and me for more than a decade, stemming initially from a dispute Dong Lee

had with me over his claim that he had been promised an equity interest in RAB that he did not receive.

20.   As a result of my extensive experience with Dong Lee's anti-Noah Bank activities, and a review of the Sunday Journal articles at issue, it is clear to me that Dong Lee, or persons acting in concert with Dong Lee, provided Chi-Yong Ahn with some, if not all, of the negative content published by Sunday Journal in the Articles.

21.   Shortly after Sunday Journal was served with its summons in this matter, on April 19, 2018, I received from our counsel several documents he had received from Sunday Journal's attorney, which almost certainly came from Dong Lee or persons working in concert with Dong Lee.

22.   For example, these Sunday Journal documents delivered to my counsel included a civil coversheet from a federal case Dong Lee brought against me personally back in 2010, and a copy of a civil complaint filed in 2014 containing allegations by "DL" (*i.e.,* Dong Lee) filed against me relating to an alleged "IPO Scheme" occurring in 2006.

23.   Similarly, Sunday Journal's filing with this Court on September 9, 2018, referred to a Qui Tam complaint filed against me and Noah Bank, which had been sealed until April of this year; I am aware that Dong Lee possessed this Qui Tam complaint before it was unsealed and had provided a draft of it to the Korean-American press in an effort to attack me and Noah Bank.

24.   Before September 9, 2018, I did not have knowledge that this Qui Tam complaint had been unsealed, as it was never served and was apparently abandoned by its relator, a former and disgruntled Noah Bank officer named Marie Lee and her attorney,

Michael Kimm. As Marie Lee and Dong Lee have been represented by Michael Kimm as witnesses in federal litigation filed against Noah Bank and me personally in 2014 in the United States District Court for the Southern District of New York (recently dismissed on summary judgment), I am confident that Sunday Journal's source for these documents delivered to my counsel was Dong Lee, or those working in concert with Dong Lee.

25. Before finding Sunday Journal to undertake his defamatory work, Dong Lee repeatedly sought to damage me and NoahBank by spreading false information to Noah Bank's shareholders, employees, customers, potential customers and with potential business associates and investors, similar to the false information appearing in the Articles.

26. I regularly conduct business at Noah Bank's headquarters in Elkins Park, Pennsylvania, as well as out of my personal residence in Pennsylvania, where I have a home office.

27. The impact of the Sunday Journal Articles was felt almost immediately by Noah Bank in Pennsylvania and elsewhere.

28. Noah Bank has always had many shareholders that reside in Pennsylvania, and the names and addresses of which can be made available to the Court upon request.

29. After the Sunday Journal Articles were published on the internet during April and May of 2017, several Korean-speaking shareholders residing in complained to me about the publications and content of the Articles.

30. These Pennsylvania shareholders referred to the accusations in the Sunday Journal Articles in their complaints to me, especially the allegations that Noah Bank and had

engaged in criminal activity, and they expressed their concern that these Articles were damaging Noah Bank's reputation in the Korean-speaking community.

31. These Noah Bank shareholders were also upset because they worried that the value of their shares of stock in Noah Bank was declining because of the Articles.

32. After the Articles were published on the internet in April, May and November 2017, Noah Bank experienced an unusual spike in our Korean-speaking customers closing their accounts.

33. Korean-speaking customers told bank officers that the reason they were closing their accounts was because after reading the Sunday Journal articles they were concerned that they could no longer trust me or Noah Bank with their money.

34. Beginning in 2017, Noah Bank has been seeking to raise additional capital through outside investors.

35. I was told by potential investors that they were not going to invest in Noah Bank because of "reputational issues" involving Noah Bank and me, which I believe arose as a result of the Articles.

36. The damage caused by the publication of the defamatory statements in the Articles to both me and Noah Bank occurred primarily in Pennsylvania, but also elsewhere.

37. I believe that the market value of Noah Bank's stock fell significantly because of the negative effects of the Sunday Journal Articles on Noah Bank's reputation and my reputation in the Korean community.

38. Falling stock price injures not only Noah Bank shareholders, but Noah Bank itself. Among the ways Noah Bank is injured is in its ongoing efforts to engage in mergers and acquisitions. As the primary means of merger is to exchange the bank's shares for shares of the merging bank, the market price of the Noah Bank shares determines our ability to acquire interests in other banks, which we are actively pursuing.

39. The reputational effects of the Sunday Journal Articles has already caused Noah Bank to lose a very favorable merger with another bank, the allegations of which are set out in Noah Bank's pleadings at paragraph 61.

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct.

_____

Edward Shin

Dated: 11/05/2018