# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NOAH BANK AND EDWARD SHIN,** Plaintiffs, | **CIVIL ACTION** |
| v. | |
| **SUNDAY JOURNAL USA CORPORATION AND Y&L MEDIA, INC.,** Defendants. | **NO. 18-1413** |

## MEMORANDUM OPINION

Plaintiffs Noah Bank and Edward Shin bring claims of defamation and false light against Defendants Sunday Journal USA Corporation and Y&L Media, Inc., for a series of articles published online by Defendants in 2017. Defendants now move to dismiss for lack of personal jurisdiction and failure to state a claim. Plaintiffs oppose dismissal, and move in the alternative for transfer to the Central District of California. For the reasons set forth below, this Court does not have personal jurisdiction over Defendants, and the case shall be transferred.

### I. BACKGROUND

Plaintiff Noah Bank is a financial institution incorporated and headquartered in Pennsylvania. Plaintiff Edward Shin is the president and CEO of Noah Bank, and a resident of Pennsylvania.

Defendants are California corporations based in Los Angeles that operate a Korean-language newspaper. Defendants publish the newspaper in print in the Los Angeles area and online at the website sundayjournalusa.com. Between May and November 2017, Defendants published four articles online that form the basis of this suit. The articles asserted that Plaintiff Shin was involved in a physical altercation in New York City, that Plaintiffs engaged in improper lending practices and that Plaintiffs are subject to a regulatory oversight for irregular

banking activity.

After the articles were published, Plaintiffs were approached by several unidentified shareholders that are residents of Pennsylvania, who had read the articles and became troubled by the reports. Some customers also closed their accounts, citing concerns about the articles. Plaintiffs also had difficulty attracting investment, which they attribute to the reputational damage inflicted by the articles.

Plaintiffs filed this suit on April 4, 2018. Defendants moved to dismiss, claiming lack of personal jurisdiction. Plaintiffs then amended the complaint; Defendants renewed their motion and further asserted that they had not been properly served. After a conference in chambers, this Court denied Defendants' motion, allowed Plaintiffs to amend their complaint yet again, and set deadlines for jurisdictional discovery to be completed by October 4, 2018.[1] Plaintiffs then filed their Second Amended Complaint on September 27, 2018. Defendants now move once again to dismiss for lack of personal jurisdiction and failure to state a claim. Plaintiffs oppose, and argue in the alternative that if personal jurisdiction is wanting in the Eastern District of Pennsylvania, the case should be transferred to the Central District of California.

## II. DISCUSSION

### A. Personal Jurisdiction

"Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). However, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal

---

[1] In their briefing, Plaintiffs assert that Defendants failed to serve any jurisdictional discovery. However, Plaintiffs have not moved to compel, nor have they otherwise indicated that additional discovery would be necessary or useful to decide the instant motion. For their part, Defendants assert that they "were not provided the opportunity to serve Plaintiffs with jurisdictional discovery." In the absence of argument from Plaintiffs, the Court declines to afford the parties any further opportunity to engage in jurisdictional discovery.

2

citations and quotation marks omitted). Absent a hearing on the question of personal jurisdiction, a court must "take the [plaintiff's] allegations as true, resolve all factual disputes in the [plaintiff's] favor, and require [the plaintiff] merely to establish a prima facie case of personal jurisdiction." *Shuker v. Smith & Nephew*, *PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (internal quotation marks omitted).

Federal courts may assert personal jurisdiction over a nonresident only to the extent authorized by state law and due process. *See* Fed. R. Civ. P. 4(k)(1)(A); *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania's personal jurisdiction requirements are set out at 42 Pa. C.S.A. § 5322(b), and "the reach of the Pennsylvania statute is coextensive with the due process clause of the United States Constitution." *Id*.

Under the due process clause, personal jurisdiction may be either general or specific. Plaintiffs do not argue that this Court has general jurisdiction over Defendants; instead, they assert that specific jurisdiction is appropriate under either the traditional specific jurisdiction analysis or the "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984). "The effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Here, Plaintiffs fail to show that personal jurisdiction is proper under either standard.

To establish specific jurisdiction under the traditional standard:

First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice.

*Id.* at 296 (internal citations and punctuation omitted); *see also Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (setting out standard).

Plaintiffs first assert that the traditional standard is met because they are based in Pennsylvania, and thus the articles written about them describe events that "necessarily" would have taken place in Pennsylvania, if they had in fact occurred. Per the argument, the articles described improper loans and other financial dealings that would have taken place at Plaintiffs' Pennsylvania offices. However, the articles are devoid of mention of Pennsylvania, and only identify one geographic location, New York City, as the site of the alleged fight involving Plaintiff Shin. Further, Noah Bank operates locations in New Jersey and New York, and the events described in the articles may well have taken place there, rather than in Pennsylvania. Thus it is difficult to discern any 'purposeful direction' towards Pennsylvania based on the potential locations of the events described in the articles.

Second, Plaintiffs assert that, because Defendants publish the print version of their newspaper only in California, Defendants' decision to publish the articles online indicates that Defendants directed their conduct beyond California. But this is little more than speculation: Defendants may have had any number of reasons to publish the articles online. And the allegation that Defendants published defamatory content that is accessible within Pennsylvania is, without more, insufficient grounds to find personal jurisdiction. *See Fatouros v. Lambrakis*, 627 F. App'x 84, 87-88 (3d Cir. 2015) ("A radio broadcast in another state and a television broadcast in another country, both of which could be accessed over the Internet, and postings in Internet forums that could be read by individuals in [the forum state] are insufficient bases for personal jurisdiction in this case.").

None of Plaintiffs' arguments support their contention that Defendants "purposefully directed [their] activities" to Pennsylvania. *Marten*, 499 F.3d at 296. Accordingly, specific personal jurisdiction may not lie under the traditional standard.

4

Under the *Calder* "effects test," "the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone are far too small to comport with the requirements of due process under our traditional analysis," if:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Id.* at 297. With regard to the third factor, "[t]he defendant must manifest behavior intentionally targeted at and focused on the forum," because the effects test "requires more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) (internal quotation marks omitted). "[T]he plaintiff has to demonstrate the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Marten*, 499 F.3d at 297-98.

In evaluating Plaintiffs' contention that the Court has jurisdiction over this controversy, the facts of *Calder* and its progeny are instructive. In *Calder*, the Supreme Court found that California could exercise personal jurisdiction over Florida defendants who had published defamatory material (i) in a magazine circulated in California more than any other state, (ii) about a California resident regarding her California-based career in a California-based industry, which (iii) drew on interviews with California-based sources. *Calder*, 465 U.S. at 788-90. The Court reasoned that, under such circumstances, "California is the focal point both of the story and of the harm suffered," and thus personal jurisdiction is "proper in California based on the 'effects' of their Florida conduct in California." *Id.* at 789.

5

Subsequently, in *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001), the Third Circuit distinguished the facts of *Calder* and found personal jurisdiction inappropriate over out-of-state defendants. The plaintiff alleged that a defamatory letter (i) was sent by defendants to the plaintiff's office in Pennsylvania, where coworkers read it, and (ii) was broadly disseminated throughout the plaintiff's professional community. *Id.* at 259. The Circuit held that these facts were insufficient to show that the defendants had expressly aimed their tortious conduct at Pennsylvania. The Circuit reasoned that the coworkers were not targeted by the defendants, because they read the letter only incidentally when they found it on the office fax machine. Further, the plaintiff's professional community, the boxing industry, was not centered in Pennsylvania, and thus there was no basis to find Pennsylvania to be the "focal point" of the defendants' activity: "[The plaintiff] has not asserted that Pennsylvania has a unique relationship with the boxing industry. . . . Even if the letter itself . . . were distributed or shared with other persons in the professional boxing community, such persons were apparently located throughout the country." *Id.*

Defendants, according to the allegations of the Complaint, did commit an intentional tort (defamation), and because Plaintiffs are residents of Pennsylvania, the effects of the tort were largely felt in Pennsylvania, but Plaintiffs have not satisfied the third prong of the *Calder* test— that Defendants targeted Pennsylvania. First, as in *Remick* and unlike in *Calder*, there is no indication that the dissemination of the defamatory statements was concentrated in the forum state. Plaintiffs have not come forward with any facts indicating that Defendants' website is read extensively in Pennsylvania—setting this case far apart from the *Calder*, where a disproportionate amount of the readership was based in the forum state. 465 U.S. at 785 (publication's sales in forum state were "almost twice the level of the next highest State").

Further, unlike in *Calder*, Plaintiffs present no indication that Defendants conducted any investigative efforts for the articles they published within Pennsylvania. Finally, as in *Remick* but unlike *Calder*, Plaintiffs have not indicated that their industry as a whole is uniquely tied to Pennsylvania. Ultimately, Plaintiffs offer no persuasive justification for personal jurisdiction. The fact that Plaintiffs reside and suffered harm here alone is not enough. *See IMO Indus.*, 155 F.3d at 265.

Accordingly, this Court lacks personal jurisdiction over Defendants.

### B. Transfer

In their briefing, Plaintiffs advocate for a transfer to the Central District of California instead of outright dismissal. Defendants have not responded to the assertion that transfer is appropriate. Under 28 U.S.C. § 1631,[2] when a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 106-07 (3d Cir. 2009) (holding that transfer under this statute is appropriate where a court finds that it lacks personal jurisdiction over the defendant).

In various submissions to this Court, Defendants have stated that they are California corporations, that they are based in Los Angeles, and that their publications are "focused on the Los Angeles area." A court may exercise general jurisdiction over a corporate defendant if the defendant's "place of incorporation [or] principal place of business" is within the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Because general jurisdiction would be

---

[2] Plaintiffs move for transfer pursuant to 28 U.S.C. § 1406(a), which governs transfer where venue is improper. The two statutes are similar, but Section 1631 appears to be the more appropriate, since it "governs transfer when there is a want of jurisdiction." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 224 (3d Cir. 2016) (en banc) (internal quotation marks omitted).

proper in the Central District of California, and because the majority of the publication activity underlying this suit is centered there, this suit shall be transferred to that district.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**

**Date: December 17, 2018**